UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

JESSE L. TETLOW,

                          Plaintiff,

v.                                                                        6:25-CV-01298
                                                                              (AJB/ML)

SOUTHSIDE MALL, LUISA MONTANTI,
ONEONTA STATE TROOPERS and
ELVIS, Mall Security.

                          Defendants.

_____

APPEARANCES:                                           OF COUNSEL:

JESSE L. TETLOW
   Plaintiff, *Pro Se*
169 Main Street
Apt. 3C
Oneonta, New York 13820

MIROSLAV LOVRIC, United States Magistrate Judge

### ORDER and REPORT-RECOMMENDATION

Plaintiff Jesse L. Tetlow ("Plaintiff") commenced this *pro se* action against Defendants

Southside Mall; Luisa Montanti, described as the manager of Southside Mall; Oneonta State

Troopers, and Elvis, described as Mall Security (collectively "Defendants") alleging violations

of his civil rights. (Dkt. No. 1.)  Plaintiff did not pay the filing fee and seeks leave to proceed *in*

*forma pauperis* ("IFP").  For the reasons set forth below, I (1) grant Plaintiff's IFP application,

and (2) recommend that the Complaint be dismissed without prejudice.

## I.   BACKGROUND

Construed as liberally[1] as possible, the Complaint alleges that Plaintiff's constitutional rights were violated by Defendants. (*See generally* Dkt. No. 1.)

More specifically, the Complaint, filed in September 2025, alleges that in "the month of April," Plaintiff was accosted by Defendant Elvis, a security guard at Southside Mall in Oneonta, New York, after Plaintiff had left his job at the Applebee's restaurant located within the mall. (Dkt. No. 1 at 2-3.)  As set forth in the Complaint, Defendant Elvis told Plaintiff that "he did not want me to glare into the shoe store as I walk by." (Dkt. No. 1 at 2.)  Plaintiff explains that he was offended by this accusation and "immediately went to the office and brought the matter up" to "the lady." (Dkt. No. 1 at 2-3.)  During this discussion, "security" threatened to "call the cops on" Plaintiff. (Dkt. No. 1 at 3.)

Following this incident, Plaintiff visited the shoe store and recorded employees who told him that they had not complained about him. (*Id*.) Subsequently, Defendant Elvis followed Plaintiff "on numerous occasions" and "called the cops on me multiple times." (*Id*.)  During this period, unidentified New York State troopers interviewed Plaintiff while he was working at Applebee's, and "were going to ban [Plaintiff] from the mall . . . based on Elvis['] false verbal statement, until [Plaintiff] showed the state troopers video recordings of each employee saying they never complained about me." (*Id*.)

As described in the Complaint, Defendant Elvis "continued to harass [Plaintiff] over an unspecified period, and "troopers would come to my job on a consistent basis." (*Id*.)  Plaintiff alleges that during this time, an unspecified "They" "never properly served me a notice of

---

[1]     The court must interpret *pro se* complaints to raise the strongest arguments they suggest. *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

suspension I never signed any documents or had any acknowledgment being [suspended] since law enforcement told me on The Recordings that I was perfectly able to come and go throughout the mall since I [] did not do anything to be barred from the mall." (*Id*.)

The Complaint alleges that Defendant Elvis' "harassment continued" for an unspecified period, and Plaintiff "recorded every incident with him." (*Id*.)  At some point, Plaintiff "decided to make my own complaint for harassment and state troopers did not honor it and . . . told me they were not going to accept my complaint . . ."  Then, in apparent retaliation for his attempted complaint, Plaintiff "was arrested for going to TJ Maxx for an interview where then I was served the notice of suspension." (*Id*. at 4.)  This notice of suspension appears to have included a ban from being on mall premises.  Although not clear from the Complaint, it appears that Plaintiff was fired or left his job at Applebee's during this period. (*Id*. at 4-5.)

As a first cause of action, Plaintiff's Complaint requests "that the mall security officer would be discharged from his position for being a bigot, and for the harassment." (*Id*. at 4.)  For a Second Cause of Action, Plaintiff asserts his belief that "Luisa Montanti,"  "owes me some compensation for loss [sic] wages, marital stress and anguish" resulting from Plaintiff's embarrassment due to harassment from mall employees and visits from law enforcement that eventually resulted in the loss of his job. (*Id*.)  Plaintiff also seeks damages for Defendant Montanti's "not communicating with me or corresponding to my complaint letter." (*Id*.)

Finally, Plaintiff asserts a Third Cause of Action against Defendants Oneonta State Troopers "for not properly doing their job by taking an oath and violating my constitution[al] rights and due process by saying I was allowed to proceed entrance inside mall then later arresting me and pressing criminal charges against me." (*Id*.)  He seeks monetary relief for "mental stress and loss [sic] wages by coming to my job just about everyday, knowing Elvis and

other people were lying about incidents making false reports." (*Id*.)  He also requests Defendants "waive the sanction, due to the right to shop and pursue happiness." (*Id*. at 5.)  Presumably, the term "sanction" refers to the ban on entering Southside Mall.

Plaintiff has not paid the filing fee and seeks leave to proceed IFP.

## II.   PLAINTIFF'S APPLICATION TO PROCEED *IN FORMA PAUPERIS*

When a civil action is commenced in a federal district court, the statutory filing fee, currently set at $405, must ordinarily be paid.  28 U.S.C. § 1914(a).  A court is authorized, however, to permit a litigant to proceed IFP status if a party "is unable to pay" the standard fee for commencing an action.  28 U.S.C. § 1915(a)(1).[2]  After reviewing Plaintiff's IFP application (Dkt. No. 2), the Court finds that Plaintiff meets this standard.  Therefore, Plaintiff's application to proceed IFP is granted.[3]

## III.   LEGAL STANDARD FOR REVIEW OF THE COMPLAINT

"Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2).

---

[2]     The language of that section is ambiguous because it suggests an intent to limit availability of IFP status to prison inmates.  *See* 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses").  The courts have construed that section, however, as making IFP status available to any litigant who can meet the governing financial criteria.  *Hayes v. United States*, 71 Fed. Cl. 366, 367 (Fed. Cl. 2006); *Fridman v. City of N.Y.*, 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

[3]     Plaintiff is reminded that, although his IFP application has been granted, he is still required to pay fees that he may incur in this action, including copying and/or witness fees.

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974); *see Fitzgerald v. First East Seventh Street Tenants Corp.*, 221 F.3d 362, 364 (2d Cir. 2000) (a district court "may dismiss a frivolous complaint *sua sponte* even when the plaintiff has paid the required filing fee[.]"); *see also Pflaum v. Town of Stuyvesant, Columbia Cty., N.Y.*, No. 11-CV-0335 (GTS/DJS), 2016 WL 865296, at *1, n.2 (N.D.N.Y. Mar. 2, 2016) (finding that the Court had the power to address and dismiss additional theories of the plaintiff's retaliation claim *sua sponte* because those theories were so lacking in arguable merit as to be frivolous).

In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 [2007]). "Determining whether a complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citation and punctuation omitted).

Moreover, Rule 10 of the Fed. R. Civ. P. provides that "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances[.]" Fed. R. Civ. P. 10(b). Rule 10's purpose is to "provide an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" *Clervrain v. Robbins*, No. 22-CV-1248 (MAD/DJS), 2022 WL 17517312, at *2 (N.D.N.Y. Dec. 8, 2022) (citation omitted), *rep't and rec. adopted*, 2023 WL 3170384 (N.D.N.Y. May 1, 2023). A complaint that does not comply with these Rules "presents far too heavy a burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [the plaintiff's] claims," and may properly be dismissed by the court. *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996) (McAvoy, C.J.).

"In reviewing a complaint . . . the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Courts are "obligated to construe a pro se complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009); *see also Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam) (reading the plaintiff's *pro se* complaint "broadly, as we must" and holding that the complaint sufficiently raised a cognizable claim). "[E]xtreme caution should be exercised in ordering sua sponte dismissal of a pro se complaint *before* the adverse party has been served and [the] parties . . . have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983) (emphasis in original).

6

IV.    ANALYSIS

Plaintiff's Complaint was drafted with a clear disregard for Rules 8(a)(2) and 10(b) of the Federal Rules of Civil Procedure which require, respectively, that a pleading include, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief," and that "a party must state its claims or defenses in numbered paragraphs, each limited as far a practicable to a single set of circumstances."  Still, in addressing the sufficiency of a plaintiff's complaint, the court must construe his pleadings liberally.  *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008).  Having reviewed Plaintiff's Complaint with this principle in mind, I recommend that all causes of action be dismissed due to numerous deficiencies, as outlined below.

### A.    Eleventh Amendment

Plaintiff's Complaint generally alleges wrongdoing by "Oneonta State Troopers." (Dkt. No. 1 at 1.)  Liberally construed, Plaintiff is asserting claims against the New York State Police, an agency of the State of New York.

New York State is immune from suits pursuant to 42 U.S.C. § 1983 seeking either legal or equitable relief, under the Eleventh Amendment.  *Papasan v. Allain*, 478 U.S. 265, 276 (1986); *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 98-100 (1984); *see Fields v. Walthers,* No. 94-CV-1659 (RSP/GJD), 1997 WL 204308 at \*2 (N.D.N.Y. April 5, 1997) ("For Eleventh Amendment purposes, governmental entities of the state that are considered 'arms of the state' receive Eleventh Amendment immunity.").  The Eleventh Amendment's immunity extends to the New York State Police as an agency of the State of New York.  *See, e.g., Riley v. Cuomo*, No. 17-CV-1631 (ADS/AYS), 2018 WL 1832929, \*4 (E.D.N.Y. Apr. 16, 2018) (holding that the New York State Police, as a division in the executive department of the State, is

immune from claims under § 1983); *Finkelman v. New York State Police*, No. 06-CV-8705 (JSR), 2007 WL 4145456, *3 (S.D.N.Y. Nov. 15, 2007) (holding that the Eleventh Amendment barred the plaintiff's suit seeking monetary damages under § 1983 against New York State Police.)

As a result, I recommend that Plaintiff's claims against Defendant "Oneonta State Troopers" be dismissed because that Defendant is immune from suit.[4]

### B.      Applicability of *Heck v. Humphrey*

Under *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), a § 1983 suit for damages that "would necessarily imply the invalidity of [the plaintiff's] conviction or sentence" is not cognizable, unless the plaintiff can show that the conviction or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id*. at 487, 114 S.Ct. 2364.

Without providing specifics, Plaintiff's Complaint describes Defendant Oneonta State Troopers as "arresting me and pressing criminal charges against me." (Dkt. No. 1 at 4.)  To the extent that Plaintiff's claims call into question any conviction or sentence resulting from these unspecified criminal charges, such claims would be barred by *Heck*.

### C.      Private Actors/Color of State Law

To state a claim under § 1983, a plaintiff must allege a deprivation of a federal right by someone acting under color of state law.  *Ciambriello v. County of Nassau*, 292 F.3d 307, 323

---

[4] A § 1983 claim for monetary damages properly brought against a specific state trooper in his or her individual capacity is not barred by the Eleventh Amendment.  *Kilcher v. New York State Police*, No. 1:19-CV-00157 (MAD/TWD), 2019 WL 3361246, at *3 n.4 (N.D.N.Y. Feb. 19, 2019), *rep't and rec. adopted*, 2019 WL 2511154 (N.D.N.Y. June 18, 2019).

(2d Cir.2002). "For a private individual or entity to be deemed to have been acting under color of state law the allegedly unconstitutional conduct of which plaintiff complains must be 'fairly attributable to the state.'" *Bishop v. Toys "R" Us–NY LLC*, 414 F.Supp.2d 385, 396 (S.D.N.Y.2006) (quoting *Tancredi v. Metro. Life Ins. Co.*, 316 F.3d 308, 312 (2d Cir.2003) (internal quotations omitted), *cert. denied*, 539 U.S. 942, 123 S.Ct. 2610, 156 L.Ed.2d 628 (2003)). Conduct will be "fairly attributable to the state" where there is "'such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself.'" *Id.* (quoting *Tancredi*, 316 F.3d at 312). "A merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity." *Ciambriello*, 292 F.3d at 324. "Instead, there must be a sufficiently high level of entanglement between the state and the private actor such that the latter can be considered the state itself." *Milton v. Alvarez*, No. 04 Civ. 8265, 2005 WL 1705523, at *3 (S.D.N.Y. July 19, 2005); *see also Tancredi*, 316 F.3d at 313 ("State action may properly be found where the state exercises coercive power over, is entwined in [the] management or control of, or provides significant encouragement, either overt or covert to, a private actor, or where the private actor operates as a willful participant in joint activity with the State or its agents, is controlled by an agency of the State, has been delegated a public function by the state, or is entwined with governmental policies.")

As described in the Complaint, Defendants Southside Mall, Luisa Montanti, and Elvis are all private actors. Defendant Southside Mall is a privately owned shopping center, Montanti is described as the mall manager, and Elvis is described as a mall security guard. Liberally construed, Plaintiff's Complaint alleges that Defendant Elvis harassed Plaintiff while he was working at or walking through Southside Mall, and Defendant Montanti ignored Plaintiff's

9

complaints regarding Elvis' behavior and ultimately issued a suspension notice barring Plaintiff from Southside Mall.  Either Defendant Montanti or Defendant Elvis complained about Plaintiff to the New York State Police, who visited Plaintiff at work multiple times before arresting him on unspecified charges.  As a result of these incidents, Plaintiff was fired from or left his employment at the Applebee's restaurant located in Southside Mall and was prevented from attending a job interview at other mall retailers.

None of these allegations against Defendants Southside Mall, Montanti, or Elvis rise to the level of state action.  "Generally, the acts of private security guards . . . do not constitute state action under § 1983." *Guiducci v. Kohl's Dep't Stores*, 320 F.Supp.2d 35, 37 (E.D.N.Y.2004) (collecting cases); *see also Bishop*, 414 F.Supp.2d at 396.  Even if Defendants Montanti and/or Elvis provided false or inaccurate information to the state troopers, they would not be converted to a state actor.  *Garvey v. Wegmans*, No. 5:18-CV-00255 (TJM/TWD), 2018 WL 2108284, at *4 (N.D.N.Y. Apr. 12, 2018), *rep't and rec. adopted*, 2018 WL 2108188 (N.D.N.Y. May 4, 2018) ("The provision of information to or summoning of police officers, even if that information is false or results in the officers taking affirmative action, is not sufficient to constitute joint action with state actors for purposes of § 1983.") (collecting cases); *see also Fisk v. Letterman*, 401 F. Supp. 2d 362, 367 (S.D.N.Y. 2005) ("a private party who calls police officers for assistance or provides them with information that may lead to an arrest of an individual does not become a state actor rendering that party liable under § 1983 to the person detained, unless the police officers were improperly influenced or controlled by the private party.").

Accordingly, I recommend that all claims against Defendants Southside Mall, Luisa Montanti, and Elvis be dismissed for failure to state a claim upon which relief can be granted.

10

**D.      Vague Allegations/General Failure to State a Claim**

Taken as a whole, the allegations scattered throughout Plaintiff's Complaint do not suggest a cause of action under 42 U.S.C. § 1983 or any other federal statute.  Plaintiff contends that his suspension or banning from the mall violates his "right to shop and pursue happiness," but such right is not protected by 42 U.S.C. § 1983.  *Pinter v. City of New York*, 976 F. Supp. 2d 539, 565 (S.D.N.Y. 2013) (rejecting plaintiff's assertion of a constitutional "right to shop at a retail establishment of his choice").  Plaintiff's allegations that Defendant Montanti or unknown state troopers failed to acknowledge his complaints regarding Defendant Elvis' conduct do not, on their own, give rise to a constitutional claim.  *See DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 196 (1989) ("[T]he Due Process Clauses generally confer no affirmative right to governmental aid[.]"); *Harrington v. County of Suffolk*, 607 F.3d 31, 34-5 (2d Cir. 2010) (concluding that there is no entitlement to a police investigation); *Star v. Burlington Police Dep't*, 189 F.3d 462 (2d Cir. 1999) (holding that plaintiff's allegation that the police failed to respond to her complaints did not state a valid due process claim).  While Plaintiff contends that repeated visits from State Police and his ultimate suspension or ban from Southside Mall affected his ability to continue employment and seek other jobs with mall tenants, these sparse allegations do not suggest a viable claim under 42 U.S.C. § 1983 or any federal labor or employment discrimination statute.  Plaintiff has not alleged any direct employment relationship with Southside Mall.

**V.      OPPORTUNITY TO AMEND**

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated."  *Branum v. Clark*, 927 F.2d 698, 704-05

11

(2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires.").  An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.").  Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.).[5]

Thus, out of deference to Plaintiff's *pro se* status, and because a more detailed pleading could potentially cure some of the defects identified in Plaintiff's claims, the undersigned recommends dismissing all claims without prejudice and with leave to amend.

If Plaintiff chooses to file an amended complaint, he should note that in any amended complaint, Plaintiff must clearly set forth facts that give rise to the claims, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act.  In addition, the revised pleading should allege facts demonstrating the specific involvement of any of the named defendants in the constitutional deprivations alleged in sufficient detail to establish that they were tangibly connected to those deprivations.  *Bass v.*

---

[5]    *See also Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015) (Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999)—that the Court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would be successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)), *rev'd on other grounds*, 682 F. App'x 30.

*Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).  Finally, Plaintiff is informed that any such amended complaint will replace the existing Complaint and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court.  *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect.").

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's application to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED**; and it is further respectfully

**RECOMMENDED** that Plaintiff's Complaint (Dkt. No. 1) be **DISMISSED WITHOUT PREJUDICE** and **WITH LEAVE TO AMEND** for failure to state a claim upon which relief can be granted; and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this report and recommendation on the docket of this case and serve a copy upon the parties in accordance with the local rules.[6]

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[7]  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN**

---

[6]   The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

[7]   If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

**DAYS WILL PRECLUDE APPELLATE REVIEW**.  28 U.S.C. § 636(b)(1) (Supp. 2013);

Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v.*

*Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

Dated:  April 23, 2026
       Binghamton, New York

Miroslav Lovric
U.S. Magistrate Judge

14

2016 WL 865296

2016 WL 865296
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

William PFLAUM, Individually and as a Citizen, Resident and Taxpayer of Town of Stuyvesant, Plaintiff,

v.

TOWN OF STUYVESANT, COLUMBIA CTY., N.Y.; and Valerie
Bertram, Individually and as Supervisor of Town of Stuyvesant, Defendants.

1:11-CV-0335 (GTS/DJS)
|
Signed 03/02/2016

**Attorneys and Law Firms**

WILLIAM PFLAUM, Plaintiff, Pro Se [1] , 3 Rybka Road, Box 40, Stuyvesant Falls, NY 12174.

BRYAN D. RICHMOND, ESQ., THOMAS J. MORTATI, ESQ., BURKE, SCOLAMIERO, MORTATI & HURD, LLP, Attorneys for Defendants, 9 Washington Square, Suite 201, P.O. Box 15085, Albany, NY 12212-5085.

**DECISION and ORDER**

GLENN T. SUDDABY, Chief United States District Judge

 **\*1**  Currently before the Court, in this civil rights action filed by William Pflaum ("Plaintiff") against the Town of Stuyvesant ("Town") and Valerie Bertram, Town Supervisor ("Bertram") (collectively, "Defendants"), is Defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56. (Dkt. No. 59.) For the reasons set forth below, Defendants' motion is granted.

## I. RELEVANT BACKGROUND

### A. Plaintiff's Complaint

As a result of the Court's prior decisions (Dkt. Nos. 17, 26), Plaintiff's sole remaining claim in this action is his First Amendment retaliation claim. More specifically, as articulated in his Complaint (which was drafted by Plaintiff, *pro se*, and therefore must be construed with special solicitude), that claim alleges three separate ways he was retaliated against for publicly criticizing Town officials. [2]  First, Plaintiff alleges that, in retaliation for filing charges of ethical violations against Defendant Bertram, she (a) "collaborated with and supported" the Town's Fire Chief to deny and/or threaten to deny fire protection to Plaintiff, (b) "supported and encouraged" various Town employees to "illegal[ly] revo[ke] ... Plaintiff's permit to operate his business," and (c) "supported and encouraged" the Town Assessor's "campaign to intimidate Plaintiff by linking [his] political speech [with his] real estate assessment." (Dkt. No. 1, ¶¶ 20-23, 116 [Pl.'s Compl.].)

Second, Plaintiff alleges that, in retaliation for writing columns on his Internet blog regarding corruption among the Town's public officials, the Town filed false criminal charges against him. (*Id.*, ¶ 116.)

Third, and finally, Plaintiff alleges that, in retaliation for criticizing Bertram, the Town Assessor, and the Town, the Town Assessor used his authority to raise taxes in order to intimidate Plaintiff into silence. (*Id.*, ¶¶ 23, 39, 47, 116.)

### B. Defendants' Motion for Summary Judgment

Pflaum v. Town of Stuyvesant, Columbia Cty., N.Y., Not Reported in Fed. Supp. (2016)

2016 WL 865296

**\*2** In their motion for summary judgment, Defendants request the dismissal of Plaintiff's Complaint in its entirety. (Dkt. No. 59.) In support of their motion, Defendants make the following four arguments. First, Defendants argue that there was no adverse action against Plaintiff in that there was no actual chilling of Plaintiff's First Amendment speech or any other damages. (Dkt. No. 61, at 3-8 [Defs.' Mem. of Law].)

Second, Defendants argue that, in any event, any such adverse action was not motivated or substantially caused by Plaintiff's First Amendment speech. (*Id.* at 5-6.)

Third, in the alternative, Defendants argue that Bertram was not personally involved in any deprivation of fire protection services to Plaintiff. (*Id.* at 5, 8-10.)

Fourth, and finally, Defendants argue that Bertram is entitled to qualified immunity. (*Id.*)

### C. Plaintiff's Opposition Memorandum of Law

Generally construed, Plaintiff makes five arguments in opposition to Defendants' motion. First, Plaintiff argues that he engaged in protected speech by creating an Internet blog on which he publicly criticized Town officials and exposed their illegal activities. (Dkt. No. 65, at 3 [Pl.'s Opp'n Mem. of Law].)

Second, Plaintiff argues that Town officials took adverse action against him by issuing noise violations against him with respect to loud dog barking on his property, retaining special prosecutors to pursue civil suits and criminal charges against him, encouraging harassment and extra-judicial threats against him, and treating him differently from other residents. (*Id.* at 4-5.) As a result, Plaintiff argues that he suffered a chilling effect on his blogging as well as monetary damages due to the expense required to oppose the Town's retaliatory activities. (*Id.* at 6-8.)

Third, Plaintiff argues that the timing of these adverse actions, i.e., that they began after he created his blog, establishes the causal connection between his protected speech and the adverse actions. (*Id.* at 5.)

Fourth, Plaintiff argues that Bertram is not entitled to qualified immunity because it was not objectively reasonable to believe that her actions did not violate Plaintiff's First Amendment rights. (*Id.* at 5-6.) According to Plaintiff, these actions consisted of (1) threatening to fire the Town's Dog Control Officer if he did not serve Plaintiff with a criminal charge related to dog barking, and (2) retaining special prosecutors to pursue this charge against Plaintiff without first obtaining the Town's approval. (*Id.* at 9.)

Fifth, Plaintiff argues that municipal liability extends to the Town because of the actions of Bertram, the Town's supervisor, and her position as a policymaker. (*Id.* at 8-9.)

Finally, the Court notes that Plaintiff spends considerable time in his opposition papers arguing the merits of issues not raised by Defendants in their motion. For example, Plaintiff discusses the Town's denial of his FOIL requests, the Town's failure to respond appropriately to alleged vandalism of his property, and the sufficiency of the evidence that led to the issuance of noise violations related to dog barking. (*See generally id.*, at 3-4, 6-9; Dkt. No. 67, ¶¶ 4, 14, 25, 27, 36, 56-107 [Pl.'s Decl.].)

### D. Defendants' Reply Memorandum of Law

In reply to Plaintiff's opposition memorandum of law, Defendants make two arguments. First, Defendants argue that, because Plaintiff has not complied with Local Rule 7.1(a)(3) in his response to their statement of material facts, their statement of material facts should be deemed admitted. (Dkt. No. 74, at 2-6 [Defs.' Reply Mem. of Law].)

**\*3** Second, Defendants argue that the record is devoid of any admissible evidence that Bertram was personally involved in an alleged deprivation of fire protection services with regard to Plaintiff's residence. (*Id.* at 6-7.) Furthermore, Defendants argue that Plaintiff cannot demonstrate that any adverse action was taken because he was never actually deprived of fire protection

services and his subjective belief that the fire department may not respond to a fire at his residence is insufficient to create a genuine dispute of fact. (*Id.* at 7-8.)

### E. Statement of Material Facts

#### 1. Plaintiff's Failure to Comply with N.D.N.Y. Local Rule 7.1

Before reciting the material facts of this case, the Court must address Plaintiff's response to Defendant's Rule 7.1 Statement of Material Facts. Local Rule 7.1(a)(3) of the Local Rules of Practice for this Court requires a party moving for summary judgment to submit a statement of material facts supported by specific citations to the record where those facts are established. N.D.N.Y. L.R. 7.1(a)(3). The non-moving party's subsequent response must mirror the moving party's statement of material facts by (1) admitting and/or denying each of the moving party's factual assertions in matching numbered paragraphs and (2) supporting any denials with specific citations to the record where the factual issues arise. *Id.* Importantly, "[t]he Court shall deem admitted any properly supported facts set forth in the [moving party's] Statement of Material Facts that the [non-moving] party does not specifically controvert." *Id.*

This Court's "Local Rule requirements are not empty formalities." *Bombard v. Gen. Motors Corp.*, 238 F. Supp. 2d 464, 467 (N.D.N.Y. 2002) (Munson, J.) (stating that "[t]he courts of the Northern District have adhered to a strict application of Local Rule 7.1[a][3]'s requirement on summary judgment motions"); *accord, Cross v. Potter*, 09-CV-1293, 2013 WL 1149525, at *3 (N.D.N.Y. Mar. 19, 2013) (McAvoy, J.). Indeed, the underlying purpose of this rule "is to assist the court in framing the issues and determining whether there exist any triable issues of fact that would preclude the entry of summary judgment." *Youngblood v. Glasser*, 10-CV-1430, 2012 WL 4051846, at *4 (N.D.N.Y. Aug. 22, 2012) (Peebles, M.J.); *see also N.Y. Teamsters Conference Pension & Ret. Fund v. Express Servs., Inc.*, 426 F.3d 640, 649 (2d Cir. 2005) (noting that "Rules governing summary judgment practice are essential tools for district courts, permitting them to efficiently decide summary judgment motions by relieving them of the onerous task of 'hunt[ing] through voluminous records without guidance from the parties'") (quoting *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 74 [2d Cir. 2001]).

In the present case, Plaintiff has failed to respond appropriately to Defendants' Rule 7.1 Statement of Material Facts. Specifically, Plaintiff has failed to admit and/or deny each of Defendants' factual assertions in matching numbered paragraphs. Indeed, Defendants' Rule 7.1 Statement contains 71 paragraphs of factual assertions, while Plaintiff's 7.1 Response contains only 11 paragraphs. (*Compare* Dkt. No. 62 [Defs.' Rule 7.1 Statement] *with* Dkt. No. 66 [Pl.'s Rule 7.1 Response].) Moreover, many of Plaintiff's responses are conclusory in nature and/or contain legal arguments. The Court notes that, when he responded to Defendants' motion, Plaintiff was represented by counsel. Accordingly, the Court will accept the factual assertions in Defendants' 7.1 Statement as true to the extent that the evidence in the record supports these facts. *See Davis v. Cumberland Farms, Inc.*, 10-CV-0480, 2013 WL 375477, at *4 (N.D.N.Y. Jan. 29, 2013) (Scullin, J.) (accepting the defendant's statement of material facts as true where plaintiff neither admitted nor denied defendant's factual assertions); *Aktas v. JMC Dev. Co., Inc.*, 877 F. Supp. 2d 1, 5 n.3 (N.D.N.Y. 2012) (D'Agostino, J.) (accepting the third-party defendants' statement of material facts as true because the defendant/third-party plaintiff failed to respond to it in accordance with Local Rule 7.1[a][3] ).

#### 2. Undisputed Material Facts

 **\*4**  For purposes of this motion, the undisputed material facts are as follows. Gerald Ennis has served as the Zoning Enforcement Officer for the Town of Stuyvesant continuously since 2003. (Dkt. No. 62, ¶ 43 [Defs.' Rule 7.1 Statement].) In this capacity, Mr. Ennis issued Plaintiff a Class 2 Home Occupation Permit in August, 2009. (*Id.*, ¶ 44.) Under this permit, "[n]o unusual appearances, noise, vibration, smoke, dust, odors, heat, glare or electrical disturbances that exceed those normally produced by a resident shall be permitted." (*Id.*, ¶ 45.) Following the issuance of this permit, Mr. Ennis received numerous noise complaints from Plaintiff's neighbors in regard to increasingly loud barking from dogs on Plaintiff's property. (*Id.*, ¶¶ 46-47.) Following

Case 6:25-cv-01298-AJB-ML    Document 5    Filed 04/23/26    Page 18 of 75

Pflaum v. Town of Stuyvesant, Columbia Cty., N.Y., Not Reported in Fed. Supp. (2016)
2016 WL 865296

an investigation into these complaints, Mr. Ennis concluded that Plaintiff's "home dog kennel which housed up to 50 dogs at a time was producing noise levels that exceeded those normally produced by a resident and, accordingly, [Plaintiff] was in violation of his Permit." (*Id.*, ¶ 48.)

On December 7, 2009, Mr. Ennis issued Plaintiff a notice of violation, which informed Plaintiff that the Town had received several complaints about the noise coming from his property and directed Plaintiff to remedy the violation by December 23, 2009. (*Id.*, ¶ 49.) Subsequently, Plaintiff contacted Mr. Ennis and requested that his phone number be given to those who had complained with instructions that they contact Plaintiff directly when there are noise issues so he can rectify any problems. (*Id.*, ¶ 50.) However, after a few months had passed, Plaintiff stopped answering his neighbors' phone calls; and, as a result, his neighbors made new complaints to Mr. Ennis. (*Id.*, ¶ 51.) After receiving these complaints and personally observing the loud noise emanating from Plaintiff's property, Mr. Ennis issued a second notice of violation to Plaintiff on April 26, 2010. (*Id.*, ¶¶ 52-53.) In response, Plaintiff advised Mr. Ennis that he would erect a sound barrier to remedy the issue. (*Id.*, ¶ 54.)

According to Mr. Ennis, he waited "some time" for Plaintiff to erect, or apply for a permit to construct, a sound barrier but neither action was taken. (*Id.*, ¶¶ 55-56.) After continuing to receive noise complaints, Mr. Ennis issued a third notice of violation to Plaintiff on August 9, 2010. (*Id.*, ¶ 56.) On the same day, Mr. Ennis met with Bertram and the Town Attorney to discuss the noise issue on Plaintiff's property. (*Id.*, ¶ 57.) The Town Attorney advised Bertram that Mr. Ennis had the authority to revoke Plaintiff's home occupation permit if he determined that Plaintiff was in violation of the permit's conditions. (*Id.*, ¶ 37.) As a result, Bertram advised Mr. Ennis that he may revoke Plaintiff's permit if he determined that the permit's conditions had been violated. (*Id.*, ¶ 38.) Later that same day (August 9, 2010), Mr. Ennis made the decision to revoke Plaintiff's permit and notified Plaintiff of that fact. (*Id.*, ¶¶ 39, 59.) Neither Plaintiff's statements concerning various issues in the Town nor his postings on various Internet sites had any bearing on the decision to revoke Plaintiff's permit. (*Id.*, ¶¶ 40, 61.)

Plaintiff testified at his deposition that the basis for his claim that he was deprived of fire protection services is that, "in 2011, or perhaps late 2010," a local fire department chief, Steve Montie, posted an online statement that Plaintiff should move out of town. (*Id.*, ¶ 14.) Plaintiff testified that the post was made in response to one of his earlier posts on a local town Internet forum; in Plaintiff's post, he had complained of alleged ethical violations committed by Bertram. (*Id.*, ¶¶ 15-16.) The alleged post by Mr. Montie states in its entirety as follows:

> William,
>
> How much more of this are you going to do ? ? ? ? You are wasting more tax payer dollars than its worth. Man up correct your problems and move on, or better yet move out.
>
> S

(*Id.*, ¶ 19.) The author of this post is not identified by name but only by the email address stuyvesantchief@fairpoint.net; and, as indicated above, the post is signed only as "S." (*Id.*, ¶ 18.)

 **\*5**  Plaintiff testified that the statements in the alleged post amounted to a threatened denial of fire department services because "the fire chief told me I should move out of town, which makes me wonder if there was a fire at my house would he come." (*Id.*, ¶ 20.) However, Plaintiff testified that no one has ever told him that the fire department would not respond if there was a fire at his house. (*Id.*, ¶ 22.) In addition, Plaintiff testified that there are two distinct fire departments in the Town, Stuyvesant Company 1 and Stuyvesant Company 2, which divide their responses to emergency calls in the Town geographically. (*Id.*, ¶ 23.) Steve Montie is the Chief of Stuyvesant Company 1 and a different chief controls Company 2. (*Id.*, ¶ 25.) Plaintiff's property is located in the geographic area covered by Company 2. (*Id.*, ¶ 24.) According to Bertram, she did not "in any way direct any fire department to deprive or threaten to deprive [Plaintiff] of fire services." (*Id.*, ¶ 33.)

Finally, Plaintiff testified that there was "never" a time that he did not publicize or speak out against some issues based upon any actions by the Town and the alleged efforts to silence him did not work. (*Id.*, ¶ 26.) In fact, following the alleged actions

Case 6:25-cv-01298-AJB-ML    Document 5    Filed 04/23/26    Page 19 of 75

Pflaum v. Town of Stuyvesant, Columbia Cty., N.Y., Not Reported in Fed. Supp. (2016)

2016 WL 865296

by the Town, Plaintiff did more blogging and increased his "political activities against the Town." (*Id.*, ¶ 27.) With respect to his business, Plaintiff testified that, despite losing his business permit in August, 2010, he continued to operate his business uninterrupted without a permit as he had before it was issued in 2009. (*Id.*, ¶ 29.) Accordingly, there was no interruption to Plaintiff's business as a result of his home business permit being revoked. (*Id.*, ¶¶ 28, 30.)

## II. STANDARD GOVERNING A MOTION FOR SUMMARY JUDGMENT

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). As a result, "[c]onclusory allegations, conjecture and speculation ... are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) (citation omitted); *see also* Fed. R. Civ. P. 56(e)(2). As the Supreme Court has famously explained, "[the non-moving party] must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the movign party. *Anderson*, 477 U.S. at 255. In addition, "[the moving party] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the ... [record] which it believes demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986); *see also* Fed. R. Civ. P. 56(c), (e). However, when the moving party has met this initial burden of establishing the absence of any genuine issue of material fact, the nonmoving party must come forward with specific facts showing a genuine dispute of material fact for trial. Fed. R. Civ. P. 56(c), (e). Where the non-movant fails to deny the factual assertions contained in the movant's Rule 7.1 Statement of Material Facts in matching numbered paragraphs supported by a citation to admissible record evidence (as required by Local Rule 7.1[a][3] of the Court's Local Rules of Practice), the court may not rely solely on the movant's Rule 7.1 Statement; rather, the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of N.Y.*, 322 F.3d 139, 143, n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

## III. ANALYSIS

### A. Whether Plaintiff Suffered an Adverse Action

**\*6** After carefully considering the matter, the Court answers this question in the negative for the reasons set forth in Defendants' memorandum of law and reply memorandum of law. (Dkt. No. 61, at 3-8 [Defs.' Mem. of Law]; Dkt. No. 74, at 6-8 [Defs.' Reply Mem. of Law].) To those reasons, the Court adds the following two points.

As this Court noted in its prior decisions, in order to state a claim for retaliation under the First Amendment, "a plaintiff must prove (1) his conduct was protected by the First Amendment, (2) the defendants' actions were motivated or substantially caused by the exercise of that right, and (3) defendants' actions effectively 'chilled' the exercise of plaintiff's First Amendment right." *Pflaum*, 937 F. Supp. 2d at 303 (citing *Dillon v. Morano*, 497 F.3d 247, 251 [2d Cir. 2007]). "In cases 'involving criticism of public officials by private citizens,' the Second Circuit has generally 'impose[d] an actual chill requirement for First Amendment retaliation claims[,]' i.e., a requirement that the plaintiff allege and ultimately prove an 'actual chill' of his First Amendment rights." *Hafez v. City of Schenectady*, 894 F. Supp. 2d 207, 221 (N.D.N.Y. 2012) (D'Agostino, J.) (quoting *Gill v. Pidlypchak*, 389 F.3d 379, 381 [2d Cir. 2004]). "To establish this element, it is not enough for the plaintiff simply to show that he changed his behavior in some way; he must show that the defendant intended to, and did, prevent or deter him from exercising his rights under the First Amendment." *Hafez*, 894 F. Supp. 2d at 221. "However, 'where the retaliation is alleged to have caused an injury separate from any chilling effect, such as a job loss or demotion, an allegation as to a chilling effect is not necessary to state a claim.'" *Id.* (quoting *Puckett v. City of Glen Cove*, 631 F. Supp. 2d 226, 239 [E.D.N.Y. 2009]); *see also Brink v. Muscente*, 11-

Case 6:25-cv-01298-AJB-ML    Document 5    Filed 04/23/26    Page 20 of 75

Pflaum v. Town of Stuyvesant, Columbia Cty., N.Y., Not Reported in Fed. Supp. (2016)
2016 WL 865296

CV-4306, 2013 WL 5366371, at *7 (S.D.N.Y. Sept. 25, 2013) (noting that, in private citizen cases, "various forms of concrete harm have been substituted for the 'actual chilling' requirement").

First, it is clear from Plaintiff's deposition testimony that there was no actual chilling of his protected speech as a result of Defendants' actions. As discussed above, Plaintiff admitted that he increased his political activities and continued to publicize his opinions against the Town in the face of its alleged efforts to silence him. "Where a party can show no change in his behavior, he has quite plainly shown no chilling of his First Amendment right to free speech." *Curley v. Vill. of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001); *see also Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 120 (2d Cir. 1995) (finding no chilling effect where, after an arrest, the plaintiff continued to publish his newspaper through which he criticized the village government); *Spear v. Town of W. Hartford*, 954 F.2d 63, 67 (2d Cir. 1992) (finding no chilling effect where, after the filing of a lawsuit, the plaintiff continued to write criticizing editorials in the same manner as before the lawsuit).

Second, to the extent that Plaintiff argues that he perceived the online post regarding the loss of fire protection as a real threat, he is still required to show that his perception was objectively reasonable, i.e., "that the defendant[s'] actions had some actual, non-speculative chilling effect." *Colombo v. O'Connell*, 310 F.3d 115, 117 (2d Cir. 2002); *see also Laird v. Tatum*, 408 U.S. 1, 13-14 (1972) (holding that "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm"). Plaintiff's subjective belief that the online post constituted a real threat, without more, is insufficient to demonstrate an actual chilling effect on his First Amendment rights. Indeed, as discussed above in Point I.E.2. of this Decision and Order, Plaintiff admitted that no one had told him that the fire department would not respond if there was a fire at his house. Moreover, a different fire chief than the one who allegedly authored the online post is responsible for responding to fire calls in the location of Plaintiff's residence.

### B. Whether There Was a Causal Connection Between Plaintiff's Speech and Any Adverse Action

**\*7** After carefully considering the matter, the Court answers this question in the negative for the reasons set forth below.

To establish the second element of his First Amendment retaliation claim, "plaintiff must provide specific proof of defendants' improper motivation with either circumstantial or direct evidence." *Media All., Inc. v. Mirch*, 09-CV-0659, 2011 WL 3328532, at *5 (N.D.N.Y. Aug. 2, 2011) (D'Agostino, J.) (citing *Curley*, 285 F.3d at 73). "Circumstantial evidence includes close temporal proximity between plaintiff's speech and the alleged retaliatory act." *Mirch*, 2011 WL 3328532, at *5.

"Regardless of the presence of retaliatory motive, however, a defendant may be entitled to summary judgment if he can show dual motivation, i.e., that even without the improper motivation the alleged retaliatory action would have occurred." *Scott v. Coughlin*, 344 F.3d 282, 287-88 (2d Cir. 2003) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 [1977]). "Plaintiff has the initial burden of showing that an improper motive played a substantial part in defendant's action. The burden then shifts to defendant to show it would have taken exactly the same action absent the improper motive." *Scott*, 344 F.3d at 288.

### 1. Revocation of Plaintiff's Business Permit

In denying Defendants' underlying motion to dismiss Plaintiff's First Amendment claim, this Court held that Plaintiff had sufficiently alleged a concrete harm through the loss of his business permit, and consequently, the loss of business income, as a result of Defendants' alleged retaliatory actions. *Pflaum*, 937 F. Supp. 2d at 308. Having carefully reviewed the record, the Court finds that Plaintiff has failed to create a genuine dispute of material fact regarding Defendants' alleged improper motive. Specifically, with respect to the revocation of his business permit, the undisputed facts establish that the Town received complaints regarding the noise emanating from Plaintiff's property. Plaintiff was given two [3] noise violations over the course of approximately one year and ample opportunity to rectify the problem. (Dkt. No. 67, Attach. 5.) Because the noise problem and complaints continued, Mr. Ennis revoked Plaintiff's permit. [4] Even if Plaintiff were able to establish that an improper motive

2016 WL 865296

played a part in this decision, it is clear to the Court that, under these circumstances, the revocation would have still occurred. Indeed, Plaintiff challenged the decision to revoke his permit in appeals made to the Town's Zoning Board of Appeals and in two actions filed in New York State Supreme Court. (Dkt. No. 67, Attachs. 1 & 2.) Although Plaintiff was successful in his state court actions, those decisions were based, in part, upon the Town's failure to follow proper procedure, rather than the merits of the Town's decision. (*Id.*)

### 2. Criminal Charges

**\*8** Plaintiff has also failed to demonstrate an improper motive with respect to his claim that he received false criminal charges in retaliation for comments on his website about corruption among public officials. Plaintiff relies on the temporal proximity of these charges with a meeting he had with Bertram and his filing of an Article 78 petition in New York State Supreme Court. More specifically, Plaintiff argues that he began an Internet blog on or about January 1, 2011, and in that blog reported on what he perceived to be the illegal activities of Town officials. (Dkt. No. 67, ¶ 15 [Pl.'s Decl.].)

For example, on January 1, 2011, Plaintiff wrote about the alleged inflation of billable time by the Town Attorney that was spent on work paid for by the Town. (*Id.* at 65:8-11.) Around the same time, Plaintiff met with Bertram to discuss his discovery of specific instances of corruption by public officials, including the alleged inflation of billable work by the Town Attorney. (Dkt. No. 59, Attach. 7, at 62:13-15; 64:9-15 [Pl.'s Dep. Tr.].) On January 15, 2011, a few days after this meeting occurred, Plaintiff was issued a criminal summons for the offense of "habitual loud barking," in violation of N.Y. Local Law § 1. (*Id.* at 61:19-22; Dkt. No. 68, Attach. 7 [Criminal Summons]; Dkt. No. 67, ¶ 15 [Pl.'s Decl.].) Plaintiff testified at his deposition that the Town Attorney went to great lengths to research the Local Law that he was charged under and assisted one of Plaintiff's neighbors in drafting an affidavit upon which the criminal summons was based. (Dkt. No. 59, Attach. 7, at 65:17-21 [Pl.'s Dep. Tr.]; Dkt. No. 67, ¶ 107 [Pl.'s Decl.].) Plaintiff argues that he is the first Town resident to be charged under this section of the Local Law. (Dkt. No. 67, ¶¶ 100, 106 [Pl.'s Decl.].) Finally, Plaintiff argues that Bertram retained outside counsel to pursue this charge against him, which was later dismissed. (Dkt. No. 67, ¶¶ 5, 19, 21 [Pl.'s Decl.]; Dkt. No. 59, Attach. 7, at 57:16-18 [Pl.'s Dep. Tr.].)

Thereafter, in October 2011, Plaintiff filed an Article 78 petition in New York State Supreme Court challenging the Town's denial of Plaintiff's FOIL requests. (Dkt. No. 59, Attach. 7, at 67:7-12 [Pl.'s Dep. Tr.].) Plaintiff sought disclosure of the information in the FOIL requests to substantiate his belief that Town officials were engaging in illegal activities. (Dkt. No. 67, ¶¶ 43-44 [Pl.'s Decl.].) One week after commencing that action, Plaintiff received a second criminal summons for the same offense related to loud dog barking. (Dkt. No. 68, Attach. 7 [Appearance Ticket]; Dkt. No. 59, Attach. 7, at 56:16-19; 67:7-12 [Pl.'s Dep. Tr.].) Plaintiff testified that he had "almost no dogs" on his property in October 2011. (Dkt. No. 59, Attach. 7, at 67:8-10 [Pl.'s Dep. Tr.].) According to Plaintiff, that charge was neither dismissed nor withdrawn, but "vanished." (*Id.*, at 57:19-58:9.)

While Plaintiff's allegations may plausibly suggest that an improper motive played a role in the charges brought against him, Defendants have submitted admissible record evidence that establishes otherwise. (Dkt. No. 59, Attach. 17.) Specifically, the criminal information in question is signed by one of Plaintiff's neighbors, Frederick Platt, and states, in part, that "my complaint is that the dogs at Glencadia Dog Camp exhibit ongoing habitual barking/howling at any given time of day or night. This has been an issue since the Fall of 2009." (*Id.*) Furthermore, an affidavit filed by Wes Powell, the Town's Dog Control Officer, states that he received repeated complaints from Mr. Platt throughout 2010, culminating in the noise complaint that served as the basis for the criminal charge. (Dkt. No. 59, Attach. 16, ¶¶ 3-5 [Powell Aff.].) Mr. Powell states that the complaint was written by Mr. Platt in his presence and that no Town official directed Mr. Powell to serve Plaintiff with the criminal summons. (*Id.*, ¶¶ 7-10.)

**\*9** Conversely, Plaintiff has not submitted any admissible record evidence supporting his claim that the Town Attorney (who is not a party) played any role in the charge being filed against him or that he is the only resident to have ever been charged under this section of the Local Law. Similarly, Plaintiff's contention that the Town pressured Mr. Platt to file a complaint against him (Dkt. No. 67, ¶ 7[Pl.'s Decl.] ) is unsubstantiated. While the timing of the charge may appear suspicious, the Town cannot control when its residents decide to file a complaint and, in light of the record evidence demonstrating that there was a preexisting

2016 WL 865296

noise problem on Plaintiff's property, the complaint is unsurprising. Moreover, the fact that Plaintiff *believes* the Town shored up its criminal charge against him is of little, if any, materiality. Finally, because the second charge seemingly "vanished," no documentation or evidence (other than the appearance ticket itself) has been submitted with respect to that charge. In any event, because the charge was never prosecuted, Plaintiff has failed to support his claim that he suffered any harm. Accordingly, the Court finds that Plaintiff has failed to meet his burden in demonstrating an improper motive with respect to this charge.

### 3. Town Assessor Gleason

Plaintiff claims that Town Assessor Howard Gleason (also not a party) threatened to raise his property taxes for engaging in political activities when Mr. Gleason hand delivered a letter to Plaintiff before a public meeting. (Dkt. No. 69, Attach. 18, at 3 [Letter from Pl. to Gleason]; Dkt. No. 67, ¶ 29 [Pl.'s Decl.].) The only evidence submitted with respect to this claim is not the original letter from Mr. Gleason to Plaintiff but letter correspondence from Plaintiff to Mr. Gleason. (Dkt. No. 69, Attach. 18, at 3 [Letter from Pl. to Gleason].) Plaintiff's letter to Mr. Gleason, dated October 5, 2010, states that Plaintiff interpreted Mr. Gleason's attempt to speak with him about tax filings before a town hall meeting as threatening in nature due to the "timing and manner of the interaction." (*Id.*) This is because Plaintiff "had announced [his] intention to call for a referendum frequently and in many forums prior to appearing for the meeting." (*Id.*) Furthermore, Plaintiff requested that, in order to "avoid the impression that you coordinate your tax-related activities with other people in government in order to intimidate free speech, please do not present important information to me in such an information [sic] and unverifiable way." (*Id.*)

However, Mr. Gleason's response to Plaintiff's letter suggests that their interaction was not meant as a threat to raise Plaintiff's taxes or "was in any way politically motivated." (Dkt. No. 69, Attach. 18, at 4 [Letter from Pl. to Gleason].) More specifically, Mr. Gleason explains that he needed to re-assess Plaintiff's property in light of the fact that Plaintiff was now running a kennel (business) on his property and decided to hand deliver his letter knowing that Plaintiff would be present for the town hall meeting. (*Id.*) Moreover, Mr. Gleason reassured Plaintiff that politics do not dictate how he performs his job and promised that all future communication will be transmitted through mail rather than in-person. (*Id.*)

Plaintiff has failed to submit any additional evidence with respect to his tax assessment, that his taxes were improperly raised or that Mr. Gleason acted with a retaliatory animus. [5] Similarly, no evidence has been submitted to substantiate Plaintiff's claim that Bertram encouraged Mr. Gleason to use his authority as Town Assessor to intimidate Plaintiff. In sum, Plaintiff has wholly failed to satisfy his burden demonstrating that he suffered harm as a result of any action taken by Mr. Gleason and that Mr. Gleason acted with an improper motive.

 **\*10**  For all of these reasons, the Court finds that Plaintiff has failed to create a genuine dispute of material fact with respect to his First Amendment claim. Because the Court has reached this conclusion, it need not, and does not, consider the merits of Defendant Bertram's alternative qualified immunity argument.

**ACCORDINGLY**, it is

**ORDERED** that Defendants' motion for summary judgment (Dkt. No. 59) is **GRANTED**. The Clerk of the Court is directed to enter judgment in favor of the Defendants and close this case.

**All Citations**

Not Reported in Fed. Supp., 2016 WL 865296

Pflaum v. Town of Stuyvesant, Columbia Cty., N.Y., Not Reported in Fed. Supp. (2016)

2016 WL 865296

## Footnotes

1 Although Plaintiff is currently proceeding *pro se*, the Court notes that he had counsel when preparing his response to Defendant's motion for summary judgment. Accordingly, no need exists to construe Plaintiff's response with the special solicitude ordinarily afforded to *pro se* litigants.

2 The Court notes that, while it did not previously (i.e., in its prior decisions) liberally construe Plaintiff's retaliation claim as arising under three separate theories, it does so now. The Court further notes that it has the power to address these two additional theories for each of two alternative reasons: (1) because Defendants moved for dismissal of Plaintiff's retaliation claim in its entirety, Plaintiff has had sufficient notice and an opportunity to be heard with respect to the two theories in question; and (2) in any event, even if Plaintiff cannot be said to have had such notice and an opportunity to be heard, he filed his Complaint *pro se* and the Court finds the two theories to be so lacking in arguable merit as to be frivolous, *see Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (recognizing that district court has power to *sua sponte* dismiss *pro se* complaint based on frivolousness notwithstanding fact that plaintiff has paid statutory filing fee).

3 As discussed above, Plaintiff was actually given three noise violations. However, because his permit was revoked on the same day that he received the third violation, the Court will disregard the third violation for purposes of this analysis.

4 The Court notes that Plaintiff spends considerable time in his opposition papers disputing the sufficiency of the evidence and procedures that were followed that led to the issuance of noise violations. (*See generally* Dkt. No. 67, ¶¶ 56-95 [Pl.'s Decl.].) However, this Court is not the proper forum for that dispute. Furthermore, to the extent that the New York Supreme Court observed that there appeared "to have been a disproportionate amount of time and money spent on [the noise violation] notice," and that the records did not "reveal a real issue with dog-barking," those observations are not binding upon this Court. (Dkt. No. 67, Attach. 2, at 6.) Setting aside the fact that the observations constitute dicta, Defendants have submitted admissible record evidence demonstrating that Mr. Ennis acted upon complaints made to him by residents of the Town, which Plaintiff has failed to properly dispute.

5 For example, with regard to this lack of additional evidence regarding retaliatory animus, Plaintiff has failed to adduce admissible record evidence establishing that, even assuming Mr. Gleason knew of Plaintiff's intent to engage in protected speech, the so-called "manner of the interaction" by Mr. Gleason (i.e., the hand delivery of the letter) was in fact unusual for Mr. Gleason given the date of the letter and the date of the public meeting. Moreover, Plaintiff has failed to adduce admissible record evidence that the so-called "timing ... of the interaction" is significant, given his rather constant exercise of his First Amendment rights during the time in question.

---

**End of Document**         © 2026 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW © 2026 Thomson Reuters. No claim to original U.S. Government Works. 9

Clervrain v. Robbins, Not Reported in Fed. Supp. (2022)

Case 6:25-cv-01298-AJB-ML    Document 5    Filed 04/23/26    Page 24 of 75

2022 WL 17517312

2022 WL 17517312
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Manetirony CLERVRAIN, Plaintiff,
v.
Jonathan ROBBINS, et al., Defendants.

1:22-CV-1248 (MAD/DJS)
|
Signed December 8, 2022

**Attorneys and Law Firms**

MANETIRONY CLERVRAIN, Plaintiff, Pro Se, Anderson, IN 46013.

## REPORT-RECOMMENDATION and ORDER

DANIEL J. STEWART, United States Magistrate Judge

**\*1** The Clerk has forwarded for review what has been docketed as a civil complaint filed by Plaintiff. Dkt. No. 1, Compl. Plaintiff has not paid the filing fee but has submitted an application to proceed *in forma pauperis* ("IFP"), Dkt. No. 2, which the Court has granted. [1]

## I. SUFFICIENCY OF THE COMPLAINT

### A. Governing Legal Standard

28 U.S.C. § 1915(e) directs that, when a plaintiff seeks to proceed *in forma pauperis*, "(2) ... the court shall dismiss the case at any time if the court determines that – ... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). [2] Thus, even if a plaintiff meets the financial criteria to commence an action *in forma pauperis*, it is the court's responsibility to determine whether the plaintiff may properly maintain the complaint that he filed in this District before the court may permit the plaintiff to proceed with this action *in forma pauperis. See id.*

Likewise, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A; *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (*per curiam*); *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (stating that both sections 1915 and 1915A are available to evaluate *pro se* prisoner complaints).

In reviewing a *pro se* complaint, the court has a duty to show liberality toward *pro se* litigants, *see Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (*per curiam*), and should exercise "extreme caution ... in ordering sua sponte dismissal of a pro se complaint *before* the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983) (internal citations omitted). Therefore, a court should not

Case 6:25-cv-01298-AJB-ML    Document 5    Filed 04/23/26    Page 25 of 75
Clervrain v. Robbins, Not Reported in Fed. Supp. (2022)
2022 WL 17517312

dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 556).

**\*2** Although a court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] - that the pleader is entitled to relief." *Id.* at 679 (quoting FED. R. CIV. P. 8(a)(2)). Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555). Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id.* (internal quotation marks and alterations omitted).

### B. Analysis of the Complaint

A court's initial review of a complaint under § 1915(e) must encompass the applicable standards of the Federal Rules of Civil Procedure. Rule 8 of the Federal Rules of Civil Procedure provides that a pleading must contain:

(1) a short and plain statement of the grounds for the court's jurisdiction ...;

(2) a short and plain statement of the claim showing that the pleader is entitled to relief; and

(3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

FED. R. CIV. P. 8(a). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer [and] prepare an adequate defense." *Hudson v. Artuz*, 1998 WL 832708, at \*1 (S.D.N.Y. Nov. 30, 1998) (quoting *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995)). Moreover, Rule 10 of the Federal Rules of Civil Procedure provides, in part:

> **(b) Paragraphs; Separate Statements.** A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence – and each defense other than a denial – must be stated in a separate count or defense.

FED. R. CIV. P. 10(b). The purpose of Rule 10 is to "provide an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" *Sandler v. Capanna*, 1992 WL 392597, at \*3 (E.D. Pa. Dec. 17, 1992).

A complaint that fails to comply with basic pleading requirements presents too heavy a burden for defendants to craft a defense "and provides no meaningful basis for the Court to assess the sufficiency of [the plaintiff's] claims," and may properly be dismissed. *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996).

Plaintiff's Complaint clearly does not satisfy these requirements. The nature of the Complaint is unclear. The Complaint recites a wide variety of federal statutes and case law, but a thorough review of the main Complaint and the numerous attachments does

Case 6:25-cv-01298-AJB-ML    Document 5    Filed 04/23/26    Page 26 of 75
Clervrain v. Robbins, Not Reported in Fed. Supp. (2022)
2022 WL 17517312

not provide clarity as to what federal claim Plaintiff seeks to pursue in this Court. It is unclear what relationship the individuals identified by Plaintiff as Defendants have to Plaintiff and how he alleges they violated his rights.

Given its lack of clarity, the Complaint is clearly subject to dismissal. "[A] court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend at least once 'when a liberal reading of the complaint gives any indication that a valid claim might be stated.'" *Bruce v. Tompkins Cty. Dep't of Soc. Servs. ex rel. Kephart*, 2015 WL 151029, at \*4 (N.D.N.Y. Jan. 7, 2015) (quoting *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991)). Accordingly, the Court recommends that the Complaint be dismissed, but that Plaintiff be afforded an opportunity to amend.

 **\*3**  The Court advises Plaintiff that should he be permitted to amend his Complaint, any amended pleading she submits must comply with Rules 8 and 10 of the Federal Rules of Civil Procedure. Any such amended complaint, **which shall supersede and replace in its entirety the previous Complaint filed by Plaintiff**, must contain **sequentially numbered paragraphs containing only one act of misconduct per paragraph**. Thus, if Plaintiff claims that his civil and/or constitutional rights were violated by more than one defendant, or on more than one occasion, he should include a corresponding number of paragraphs in his amended complaint for each such allegation, with each paragraph specifying (i) the alleged act of misconduct; (ii) the date, including the year, on which such misconduct occurred; (iii) the names of each and every individual who participated in such misconduct; (iv) where appropriate, the location where the alleged misconduct occurred; and, (v) the nexus between such misconduct and Plaintiff's civil and/or constitutional rights.

Plaintiff is further cautioned that no portion of his prior Complaint shall be incorporated into his amended complaint by reference. Any amended complaint submitted by Plaintiff must set forth all of the claims he intends to assert against the defendants and must demonstrate that a case or controversy exists between the Plaintiff and the defendants which Plaintiff has a legal right to pursue and over which this Court has jurisdiction. If Plaintiff is alleging that the named defendant violated a law, he should specifically refer to such law.

## II. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Plaintiff's Complaint be **DISMISSED with leave to amend**; and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) [3] days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

**All Citations**

Not Reported in Fed. Supp., 2022 WL 17517312

---

**Footnotes**

---

2022 WL 17517312

1       Plaintiff has also moved for leave to file electronically. Dkt. No. 3. Given the recommended disposition of this case, that Motion is denied with leave to renew if Plaintiff files a complaint that survives review under section 1915.

2       To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

3       If you are proceeding *pro se* and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R. CIV. P. 6(a)(1)(C).

---

**End of Document**                                              © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2023 WL 3170384

2023 WL 3170384
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Manetirony CLERVRAIN, Plaintiff,
v.
Jonathan ROBBINS, Jean-Max Bellerive, Josue Pierre-Louis, Garry Conille, Jean-Claude
Theogene, Barthelemy Anteno, Kwasi Amoako-Attah, and Victor (Ito) Bisono Haza, Defendants.

1:22-CV-1248 (MAD/DJS)
|
Signed May 1, 2023

**Attorneys and Law Firms**

MANETIRONY CLERVRAIN, 4326 South Scatterfield Road, Suite 153, Anderson, Indiana 46013, Plaintiff, Pro Se.

**ORDER**

Mae A. D'Agostino, United States District Judge:

 **\*1**  On November 22, 2022, *pro se* Plaintiff Manetirony Clervrain ("Plaintiff") filed a complaint against Defendants consisting of 70 pages of forms and documents, *see* Dkt. No. 1, "recit[ing] a wide variety of federal statutes and case law," Dkt. No. 7 at 5, and around two hundred pages of attachments. *See* Dkt. Nos. 1-1, 1-5, 1-6. On the same day, Plaintiff moved for leave to proceed *in forma pauperis* ("IFP"), *see* Dkt. No. 2, and to obtain an ECF login and password. *See* Dkt. No. 3.

On December 8, 2022, Magistrate Judge Daniel J. Stewart granted Plaintiff's motion to proceed IFP. *See* Dkt. No. 6. Additionally, Magistrate Judge Stewart issued a Report-Recommendation and Order recommending that the complaint be dismissed with leave to amend. *See* Dkt. No. 7. Plaintiff has not filed an objection to the Report-Recommendation and Order.

When a party declines to file objections to a magistrate judge's report-recommendation or files "[g]eneral or conclusory objections or objections which merely recite the same arguments [presented] to the magistrate judge," the district court reviews those recommendations for clear error. *O'Diah v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, \*1 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted); *see also McAllan v. Von Essen*, 517 F. Supp. 2d 672, 679 (S.D.N.Y. 2007). After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

"[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.' " *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)) (other citations omitted). The Second Circuit has held that the court is obligated to " 'make reasonable allowances to protect *pro se* litigants' " from inadvertently forfeiting legal rights merely because they lack a legal education. *Govan*, 289 F. Supp. 2d at 295 (quoting *Taguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

Having reviewed the December 8, 2022 Report-Recommendation and Order, Plaintiff's complaint and the applicable law, the Court finds that Magistrate Judge Stewart correctly determined that the complaint should be dismissed. The complaint is largely incomprehensible and suffers from several deficiencies. Rule 8(a) of the Federal Rules of Civil Procedure provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Plaintiff's complaint is neither short nor plain. *See* Dkt. No. 1. As currently drafted, and even with the leniency given

2023 WL 3170384

to a *pro se* litigant's pleadings, Plaintiff failed to meet pleading standards such that the Court is unable to meaningfully analyze whether Plaintiff can allege any colorable claim against Defendants. *See Canning v. Hofmann*, No. 1:15-CV-0493, 2015 WL 6690170, *5 (N.D.N.Y. Nov. 2, 2015) ("[H]aving found that none of the allegations in Plaintiff's meandering and indecipherable Complaint raise a cognizable cause of action, the Court concludes that the Complaint fails to state a claim upon which relief may be granted and is subject to dismissal") (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

 **\*2**  Finally, the Court agrees with Magistrate Judge Stewart that Plaintiff should be granted an opportunity to amend out of deference to Plaintiff's *pro se* status. *See Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (" 'Generally, leave to amend should be freely given, and a *pro se* litigant in particular should be afforded every reasonable opportunity to demonstrate that he has a valid claim' ") (quotation omitted). Should Plaintiff choose to amend the complaint, the Court urges Plaintiff to review Magistrate Judge Stewart's suggestions in the Report-Recommendation and Order thoroughly. *See* Dkt. No. 7 at 4-6.

Accordingly, the Court hereby

**ORDERS** that the Report-Recommendation and Order (Dkt. No. 7) is **ADOPTED in its entirety**; and the Court further

**ORDERS** that Plaintiff's complaint (Dkt. No. 1) is **DISMISSED with leave to amend**; and the Court further

**ORDERS** that Plaintiff shall file his amended complaint within **thirty (30) days** of the date of this Order; and the Court further

**ORDERS** that, if Plaintiff fails to file an amended complaint within thirty (30) days of the date of this Order, the Clerk of the Court shall enter judgment in Defendants' favor and close this case without further order from this Court; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2023 WL 3170384

---

**End of Document**                                   © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Case 6:25-cv-01298-AJB-ML   Document 5   Filed 04/23/26   Page 30 of 75

1997 WL 204308
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Charles Mason FIELDS, Plaintiff,

v.

Thomas WALTHERS and the New York State Division of Parole, Defendants.

No. 94–CV–1659 (RSP/GJD).
|
April 15, 1997.

**Attorneys and Law Firms**

Charles Mason Fields, Fishkill, NY, Pro Se.

Dennis C. Vacco, Attorney General of the State of New York, Albany, NY, for Defendants; Anthony B. Quartararo, Assistant Attorney General, of counsel.

*ORDER*

ROSEMARY S. POOLER, District Judge.

 **\*1**  The above matter comes to me following a Report–Recommendation by Magistrate Judge Gustave J. DiBianco, duly filed on the 24th day of March, 1997. Following ten days from the service thereof, the Clerk sent me the entire file, including any and all objections filed by the partied herein. Objections have not been filed.

In his civil rights action, plaintiff alleged that defendants violated his constitutional rights with respect to a preliminary parole revocation hearing. The magistrate judge recommended that I grant defendants' motion for summary judgment because (1) the Eleventh Amendment of the United States Constitution prohibits plaintiffs suit against the New York State Division of Parole, and (2) plaintiff failed to demonstrate that defendant Thomas Walthers was personally involved in plaintiffs alleged constitutional violation.

After careful review of all of the papers herein, including the magistrate judge's Report–Recommendation, and no objections have been submitted thereto, it is

ORDERED, that:

  1. The Report–Recommendation is hereby APPROVED.

  2. The defendants' motion for summary judgment is GRANTED and the complaint is dismissed in its entirety for the reasons set forth in the magistrate judge's Report–Recommendation.

  3. The Clerk serve a copy of this Order on the parties by regular mail.

IT IS SO ORDERED.

1997 WL 204308

REPORT–RECOMMENDATION

This matter was referred to the undersigned for report and recommendation by the Honorable Rosemary S. Pooler, United States District Judge, pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rules N.D.N.Y. 72.3(c).

In the instant civil rights complaint plaintiff alleges constitutional violations with respect to his preliminary parole revocation hearing held on October 14, 1994. Plaintiff alleges that he was denied his right to counsel at his preliminary hearing.

Plaintiff seeks substantial monetary relief.

Presently before the court is the defendants' motion for summary judgment pursuant to FED. R. CIV. P. 56 (Docket # 12). For the following reasons, this court agrees with the defendants and will recommend dismissal of the complaint.

DISCUSSION

1. *Summary Judgment:*
Summary judgment may be granted when the moving party carries its burden of showing the absence of a genuine issue of material fact. Fed.R.Civ.P. 56; *Thompson v. Gjivoje,* 896 F.2d 716, 720 (2d Cir.1990) (citations omitted). "Ambiguities or inferences to be drawn from the facts must be viewed in the light most favorable to the party opposing the summary judgment motion." Id. However, when the moving party has met its burden, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 585–86, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). At that point, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial. *Id.*

2. *Eleventh Amendment:*
 **\*2**  One of the defendants in the instant case is the New York State Division of Parole. It is well settled that absent a waiver by the state, or a valid congressional override, the Eleventh Amendment prohibits federal courts from entertaining suits by private parties against the states. *Farid v. Smith,* 850 F.2d 917, 920–21 (2d Cir.1988) (citing Kentucky v. Graham, 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985)). When Congress enacted sections 1983 and 1985, it did not abrogate the states' Eleventh Amendment immunity. *United States v. City of Yonkers,* 880 F.Supp. 212, 231 (S.D.N.Y.1995)(citing *Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979)).

For Eleventh Amendment purposes, governmental entities of the state that are considered "arms of the state" receive Eleventh Amendment immunity. *Will v. Michigan Department of Police,* 491 U.S. 58, 70, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); *Komlosi v. New York State OMRDD,* 64 F.3d 810 (2d Cir.1995). The New York State Division of Parole is clearly a state entity to which the Eleventh Amendment immunity applies. Thus, the instant case must be dismissed as against the New York State Division of Parole.

3. *Personal Involvement:*
In order to be liable for damages under section 1983, the defendant must have been personally involved in the alleged constitutional violation. *Polk County v. Dodson,* 454 U.S. 312, 325, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981); *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977), *cert. denied,* 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978).

Case 6:25-cv-01298-AJB-ML    Document 5    Filed 04/23/26    Page 32 of 75

1997 WL 204308

In the instant case, plaintiff sues Thomas Walthers, as the Parole Officer that was responsible for the alleged violation. However, it is clear from the transcript of the preliminary parole hearing which has been submitted as part of the defendants' motion for summary judgment, that Mr. Walthers was not even present at the plaintiff's preliminary parole revocation hearing. Additionally, it is apparent that the Parole Officer had absolutely nothing to do with the appointment or the lack of appointment of counsel. It was the Administrative Law Judge (ALJ) that did not allow plaintiff the adjournment to obtain counsel. The ALJ's rationale was that plaintiff had no absolute right to counsel at a preliminary parole revocation hearing. Defendants' Exhibit B, Transcript of Preliminary Parole Revocation Hearing at 14. It was the judge's ruling that plaintiff could proceed at that stage without an attorney. *Id.* Plaintiff then decided he would leave the room because he did not wish to proceed. He voluntarily left the hearing room, and the preliminary hearing was held without him. Id. at 15.

In any event, it is clear that defendant Walthers was not personally involved in the alleged constitutional violation. Thus, the complaint may be dismissed as to this defendant.

WHEREFORE, based on the above, it is hereby

RECOMMENDED, that defendants' motion for summary judgment (Docket # 12) be GRANTED, and the complaint be dismissed in its entirety.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. *FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW. Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

**All Citations**

Not Reported in F.Supp., 1997 WL 204308

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

Case 6:25-cv-01298-AJB-ML    Document 5    Filed 04/23/26    Page 33 of 75

2018 WL 1832929

2018 WL 1832929
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Russell RILEY, Plaintiff,

v.

Andrew CUOMO, in his official capacity as governor of the State of New York, New York State Police, Defendant(s).

2:17-cv-01631 (ADS)(AYS)
|
Signed 04/16/2018

**Attorneys and Law Firms**

Christopher Joseph Cassar, 13 East Carver Street, Huntington, NY 11743, By: Christopher J. Cassar, Esq., Of Counsel, Attorney for the Plaintiff.

New York State Office of the Attorney General, Nassau Regional Office, 200 Old Country Road, Suite 240, Mineola, NY 11501, By: Christina H. Bedell, Assistant Attorney General, Counsel for the Defendants.

**MEMORANDUM OF DECISION & ORDER**

ARTHUR D. SPATT, United States District Judge

**\*1** The Plaintiff Russel Riley (the "Plaintiff") brought this federal civil rights action pursuant to 42 U.S.C. § 1983 ("Section 1983") against the Defendants Andrew Cuomo, in his official capacity of the Governor of the State of New York ("Governor Cuomo," the "Governor," or "Cuomo") and the New York State Police (the "NYSP") (collectively, the "Defendants").

Presently before the Court is a motion by the Defendants to dismiss the complaint pursuant to Federal Rule of Civil Procedure ("FED. R. CIV. P.") 12(b)(1) and 12(b)(6). For the following reasons, the Defendants' motion is granted in its entirety.

**I. BACKGROUND**

**A. The Relevant Facts**
The following facts are drawn from the Plaintiff's complaint, and for the purposes of the instant motion, are presumed to be true.

The Plaintiff owned and had a valid license for ten firearms. On January 9, 2017, members of the NYSP entered the Plaintiff's home without a warrant and seized ten firearms.

The firearms have not been returned to the Plaintiff, and there has been no hearing regarding the seizure of the firearms.

The Plaintiff makes broad references to the New York Secure Ammunition and Firearms Enforcement Act of 2013 (the "NY SAFE Act"), but does not explicitly state that his firearms were confiscated as a result of that statute.

**B. The Relevant Procedural History**

2018 WL 1832929

On March 23, 2017, the Plaintiff filed his complaint. The complaint alleges that the NY SAFE Act is unconstitutional under the Fourth and Fourteenth Amendments to the United States Constitution in that it fails to provide gun owners who have had their firearms seized with a hearing. However, the Plaintiff does not seek a declaratory judgment declaring that the NY SAFE Act is unconstitutional. Furthermore, as stated above, he does not explicitly state that his guns were seized because of that statute; or, if they were, how that statute caused his firearms to be seized.

The complaint alleges that the Plaintiff's Fourth, Fifth, and Fourteenth Amendment rights were violated when the Defendants seized his firearms without a warrant; failed to provide him with a hearing; and illegally obtained statements from him. In those ways, the Defendants allegedly violated Section 1983.

The Plaintiff seeks declaratory relief in the form of an order stating that the Defendants violated his constitutional rights. He asks that the Court order that the firearms be returned to him. Further, he seeks "a judgment ... requiring the Defendants to conduct a prompt hearing following the seizure of the property in all cases at which time the Defendants must demonstrate probable cause for the seizure of the property and that it was necessary that the property remain in the custody of the Defendants." (Compl. Wherefore Clause ¶ 3).

The Plaintiff seeks injunctive and declaratory relief; and a judgment requiring the Defendants to provide notice and a hearing to any future victims of seizures similar to the one experienced by the Plaintiff. The complaint does not explicitly seek damages, but only reasonable attorneys' fees and costs. While the Court notes that the Plaintiff's memorandum in opposition to the motion to dismiss states that "the underlying complaint is not exclusively seeking an award of damages under § 1983," (Pl.'s Mem. in Opp. to Mot. to Dismiss at 4), a plaintiff is not permitted to amend his complaint by virtue of what is said in a memorandum of law, *Uddoh v. United Healthcare*, 254 F. Supp. 3d 424, 429 (E.D.N.Y. 2017) ("A plaintiff, however, is not permitted to interpose new factual allegations or a new legal theory in opposing a motion to dismiss...." (citing *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) ) ). The complaint does not explicitly seek damages, and the Court cannot construe it otherwise.

**\*2**  On September 25, 2017, the Defendants filed the instant motion to dismiss the complaint for lack of jurisdiction pursuant to Rule 12(b)(1), and for failure to state a claim pursuant to Rule 12(b)(6).

## II. DISCUSSION

**A. As to the Defendants' Motion to Dismiss Based on Sovereign Immunity**
The Defendants have moved for dismissal based on sovereign immunity pursuant to Rule 12(b)(1).

As an initial matter, the Court first observes that within the Second Circuit, the question of whether a motion to dismiss made on sovereign immunity grounds should be reviewed under Rule 12(b)(1) or under Rule 12(b)(6) remains unresolved. *See Carver v. Nassau Cty. Interim Fin. Auth.,* 730 F.3d 150, 156 (2d Cir. 2013) ("[W]hether the claim of sovereign immunity constitutes a true issue of subject matter jurisdiction or is more appropriately viewed as an affirmative defense is an open question in the Supreme Court and the Second Circuit." (citing *Wisc. Dep't of Corr. v. Schacht,* 524 U.S. 381, 391, 118 S. Ct. 2047, 141 L.Ed. 2d 364 (1998) ) ); *see also Garcia v. Paylock,* 13-CV-2868 KAM, 2014 WL 298593, at \*2 n.3 (E.D.N.Y. Jan. 28, 2014) ("It is an open question in the Second Circuit whether the claims of sovereign immunity should be viewed as raising a question of subject matter jurisdiction, and thus be evaluated under \*339 Rule 12(b)(1), or as an affirmative defense analyzed under Rule 12(b)(6).").

This "distinction is significant," because "while [a district court] must accept all factual allegations in a complaint as true when adjudicating a motion to dismiss under FED. R. CIV. P. 12(b)(6), ... in adjudicating a motion to dismiss for lack of subject-matter jurisdiction [pursuant to FED. R. CIV. P. 12(b)(1) ], a district court may resolve disputed factual issues by reference to evidence outside the pleadings, including affidavits." *State Employees Bargaining Agent Coal. v. Rowland,* 494 F.3d 71, 77 (2d Cir. 2007) (internal citations omitted). As such, in accordance with the approach taken by other district courts within this Circuit, the Court will apply the stricter standard set under Rule 12(b)(6) while analyzing Defendants' sovereign immunity arguments.

*See Tiraco v. New York State Bd. of Elections,* 963 F. Supp. 2d 184, 191 n.6 (E.D.N.Y. 2013) (noting that "[t]his distinction [ ] does not alter the outcome" of the case because "the court [ ] considered only the pleadings and the relevant state and federal law and [drew] all inferences in Plaintiff's favor") (citations omitted); *McMillan v. N.Y. State Bd. of Elections,* No. 10-CV-2502 (JG)(VVP), 2010 WL 4065434, at *3 (E.D.N.Y. Oct. 15, 2010) (looking "only to the pleadings and to state and federal law" to resolve questions regarding sovereign immunity).

### 1. The Rule 12(b)(6) Standard

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the Plaintiff. *See Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013); *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Bold Electric, Inc. v. City of New York*, 53 F.3d 465, 469 (2d Cir. 1995); *Reed v. Garden City Union Free School Dist.*, 987 F. Supp. 2d 260, 263 (E.D.N.Y. 2013).

**\*3** Under the now well-established *Twombly* standard, a complaint should be dismissed only if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L.Ed. 2d 929 (2007). The Second Circuit has explained that, after *Twombly,* the Court's inquiry under Rule 12(b)(6) is guided by two principles:

> First, although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss and [d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 664, 129 S. Ct. 1937, 1940, 173 L.Ed. 2d 868 (2009) ).

Thus, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and ... determine whether they plausibly give rise to an entitlement of relief." *Iqbal*, 556 U.S. at 679.

### B. The Eleventh Amendment

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." *Rowland,* 494 F.3d at 95 (quoting U.S. CONST. AMEND. XI). The Eleventh Amendment bars federal courts from exercising subject matter jurisdiction over claims against states absent their consent to such a suit or an express statutory waiver of immunity. *See Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 90-100, 104 S. Ct. 900, 79 L.Ed. 2d 67 (1984); *see also Huminski v. Corsones,* 386 F.3d 116, 133 (2d Cir. 2004). Although the plaintiff generally bears the burden of proving subject matter jurisdiction, the entity claiming Eleventh Amendment immunity bears the burden to prove such. *See Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.,* 466 F.3d 232, 237 (2d Cir. 2006).

Section 1983 imposes liability for "conduct which 'subjects, or causes to be subjected' the complainant to a deprivation of a right secured by the Constitution and laws." *Rizzo v. Goode,* 423 U.S. 362, 370-71, 96 S. Ct. 598, 46 L.Ed. 2d 561 (1976) (quoting 42 U.S.C. § 1983). It is well-settled that states are not "persons" under section 1983 and, therefore, Eleventh Amendment immunity is not abrogated by that statute. *See Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71, 109 S. Ct. 2304, 105 L.Ed. 2d 45 (1989).

2018 WL 1832929

### 1. Claims Against State Administrative Agencies

Regardless of the type of relief sought, the Eleventh Amendment bars this Court from assuming jurisdiction over plaintiffs' claims asserted against the State of New York and its agencies. When the state or one of its "arms" is the defendant, sovereign immunity bars federal courts from entertaining lawsuits against them "regardless of the nature of the relief sought." *Pennhurst,* 465 U.S. at 100.

### a. Application to the Plaintiff's Claims Against the NYSP

**\*4** As the Eleventh Amendment bars all suits against administrative agencies of a state, the Plaintiff's claims against the NYSP cannot be sustained. Defendant New York State Police is a division in the executive department of New York—*see* section 210 of New York's Executive Law—and is therefore immune from all claims, both federal and state. Congress has not overridden states' sovereign immunity respecting constitutional claims brought under 42 U.S.C. § 1983. *Will*, 491 U.S. at 109. And it is well established that "New York State has not waived its sovereign immunity from Section 1983 claims." *Nolan v. Cuomo*, No. 11 CV 5827 (DRH)(AKT), 2013 WL 168674, at \*7 (E.D.N.Y. Jan. 16, 2013) (citing *Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 39-40 (2d Cir. 1977) ); *see also Mamot v. Bd. of Regents,* 367 Fed.Appx. 191, 192 (2d Cir. 2010) (summary order); *Dube v. State Univ. of New York,* 900 F.2d 587, 594-95 (2d Cir. 1990) (holding that the Eleventh Amendment precludes an action under Section 1983 against SUNY, an integral part of the State of New York). Therefore, the NYSP is entitled to sovereign immunity on the Plaintiff's claims.

Accordingly, the Defendants' motion to dismiss the Plaintiff's claims against the NYSP is granted.

### 2. Claims Against State Officials in Their Official Capacity

A suit for damages against a state official in his or her official capacity "is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state." *Ying Jing Gan v. City of New York,* 996 F.2d 522, 529 (2d Cir. 1993); *see also Will*, 491 U.S. at 71; *Ford v. Reynolds,* 316 F.3d 351, 354 (2d Cir. 2003). However, "the applicability of the Eleventh Amendment bar [to suits against individuals in their official capacities] depends on the form of relief sought." *Lee v. Dep't of Children & Families,* 939 F.Supp.2d 160, 165-66 (D. Conn. 2013). Money damages cannot be recovered from state officers sued in their official capacities. *See e.g., Will,* 491 U.S. at 71 ("[A] suit against a state official in his or her official capacity is not a suit against an official but rather is a suit against the official's office."); *Edelman v. Jordan,* 415 U.S. 651, 663, 94 S. Ct. 1347, 39 L.Ed. 2d 662 (1974) ("[A] suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment."); *Goonewardena v. New York,* 475 F. Supp. 2d 310, 329 (S.D.N.Y. 2007) ("[S]overeign immunity also extends to bar claims for monetary damages brought against state officers sued under section 1983 in their official capacities.").

Similarly, "judgments against state officers declaring that they violated federal law in the past" are also not permitted. *Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy,* 506 U.S. 139, 146, 113 S. Ct. 684, 121 L.Ed. 2d 605 (1993) (citing *Green v. Mansour,* 474 U.S. 64, 73, 106 S. Ct. 423, 88 L.Ed. 2d 371 (1985) ). However, prospective injunctive relief is available against individuals being sued in their official capacities in order to correct an ongoing violation of federal law. *See Edelman,* 415 U.S. at 663; *Ex Parte Young,* 209 U.S. 123, 28 S. Ct. 441, 52 L.Ed. 714 (1908). In this regard, through the doctrine of *Ex Parte Young,* a party may bring "a suit for injunctive [or declaratory] relief challenging the constitutionality of a state official's actions in enforcing state law." *CSX Transp., Inc. v. N.Y. State Office of Real Prop. Servs.*, 306 F.3d 87, 98 (2d Cir. 2002) (internal quotation marks and alteration omitted); *see also Arthur v. Nyquist,* 573 F.2d 134, 138 (2d Cir. 1978).

In order to determine whether the *Ex parte Young* exception allows the Plaintiff to bring suit against state officials, this Court must first determine whether the complaint alleges an ongoing violation of federal law and second, whether the Plaintiff seeks relief properly characterized as prospective. *See Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645, 122 S. Ct. 1753, 152 L.Ed. 2d 871 (2002). "[T]o successfully avoid the Eleventh Amendment bar, a plaintiff must prove that a defendant's

2018 WL 1832929

violation of federal law is of an ongoing nature as opposed to a case 'in which federal law has been violated at one time or another over a period of time in the past.' " *Papasan v. Allain,* 478 U.S. 265, 277-78, 106 S. Ct. 2932, 92 L.Ed. 2d 209 (1986) (quotation omitted). The inquiry for determining whether an "ongoing violation" exists is, "does the enforcement of the law amount to a continuous violation of plaintiffs constitutional rights or a single act that continues to have negative consequences for plaintiffs." *New Jersey Educ. Ass'n v. New Jersey,* No. 11-5024, 2012 WL 715284, at *4 (D.N.J. Mar. 5, 2012).

**\*5**  Furthermore, when a plaintiff seeks prospective relief against a state official in their official capacity where the plaintiff alleges that a particular statute is unconstitutional, "the state officer ... 'must have some connection with the enforcement of the act' " that includes "both a particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty." *Kelly v. New York State Civil Serv. Comm'n,* No. 14 CV 716 VB, 2015 WL 861744, at *3 (S.D.N.Y. Jan. 26, 2015) (quoting *Ex Parte Young,* 209 U.S. at 157), *aff'd sub nom. Kelly v. New York Civil Serv. Comm'n,* 632 Fed.Appx. 17 (2d Cir. 2016); *see also CSX Transp.*, 306 F.3d at 99 (amenability to suit under Eleventh Amendment requires "both the power and the duty" to take challenged action).

### a. Application to the Plaintiff's Claims Against Governor Cuomo in His Official Capacity

As stated above, the complaint does not explicitly seek damages. However, even if it did, the Plaintiff would be unable to seek that relief against Governor Cuomo in his official capacity. *Ying Jing Gan*, 996 F.2d at 529 ("To the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state." (internal citations omitted) ).

As to his requests for declaratory and injunctive relief, the Court finds that the Plaintiff does not explicitly seek prospective relief. Instead, he seeks a declaration that the Defendants violated federal law in the past, and a return of his firearms. Courts have held that neither of these types of relief are prospective. *See Puerto Rico Aqueduct and Sewer*, 506 U.S. at 146 (stating that "judgments against state officers declaring that they violated federal law in the past" are not permitted under the *Ex Parte Young* doctrine); *Dotson v. Griesa,* 398 F.3d 156, 177 n.16 (2d Cir. 2005) (holding that Second Circuit precedent "preclude[s] a federal court from ordering affirmative action by either the state or federal government employees in their official capacities"); *Nat'l R.R. Passenger Corp. v. McDonald*, 978 F. Supp. 2d 215, 233 (S.D.N.Y. 2013) ("[C]ourts in this Circuit have [held] ... that the return of property taken by the state is barred by the Eleventh Amendment because that constitutes 'retrospective' relief." (collecting cases) ), *aff'd*, 779 F.3d 97 (2d Cir. 2015); *Dean v. Abrams*, No. 94 CIV 3704 (LAK), 1995 WL 791966, at *2 n.5 (S.D.N.Y. Dec. 26, 1995) ("The only exception to the Eleventh Amendment's protection is for 'prospective injunctive relief,' but Dean's demand for ... the return of her property does not qualify for this exception." (collecting cases) ).

While the Plaintiff does ask for an order declaring that the Defendants must afford any future victims of such seizures a prompt and fair hearing, the Plaintiff has not plead sufficient facts to demonstrate that he has standing to request such relief. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185, 120 S. Ct. 693, 706, 145 L.Ed. 2d 610 (2000) ("[A] plaintiff must demonstrate standing separately for each form of relief sought.")

"In seeking prospective relief like an injunction, a plaintiff must show that he can reasonably expect to encounter the same injury again in the future—otherwise there is no remedial benefit that he can derive from such judicial decree." *MacIssac v. Town of Poughkeepsie*, 770 F. Supp. 2d 587, 593 (S.D.N.Y. 2011) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 S. Ct. 1660, 75 L.Ed. 2d 675 (1983) ). A plaintiff cannot seek injunctive relief merely for past injury. *O'Shea,* 414 U.S. at 495-96, 94 S. Ct. 669; *Deshawn E. by Charlotte E. v. Safir,* 156 F.3d 340, 344 (2d Cir. 1998). Instead, "the injury alleged must be capable of being redressed through injunctive relief 'at that moment.' " *Robidoux v. Celani,* 987 F.2d 931, 938 (2d Cir. 1993) (quoting *Cty. of Riverside v. McLaughlin,* 500 U.S. 44, 51, 111 S. Ct. 1661, 114 L.Ed. 2d 49 (1991) ).

**\*6**  Here, the Plaintiff does not allege that his guns will again be seized in the future. Indeed, as stated above, the Plaintiff did not state why his guns were seized. He does not plead sufficient facts to demonstrate standing to seek an order forcing the

**Riley v. Cuomo, Not Reported in Fed. Supp. (2018)**

Case 6:25-cv-01298-AJB-ML   Document 5   Filed 04/23/26   Page 38 of 75

2018 WL 1832929

state to afford any future victims of seizures a prompt and fair hearing because he has not alleged that he will be a victim of such a seizure in the future.

Therefore, the Plaintiff does not seek prospective relief for an ongoing violation of federal law, and cannot avail himself of the *Ex Parte Young* doctrine. Governor Cuomo therefore has sovereign immunity with regard to the Plaintiff's claims.

The Plaintiff contends that he should be permitted to proceed on his theory of supervisory liability until he is able, through discovery, to determine which subordinate officials should be added to the complaint. This argument is completely unavailing.

First, "[a] defendant's supervisory authority is insufficient in itself to demonstrate liability under § 1983." *LaMagna v. Brown*, 474 Fed.Appx. 788, 789 (2d Cir. 2012) (citing *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) ); *Richardson*, 347 F.3d at 435 ("[M]ere linkage in the prison chain of command is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim." (citations and internal quotation marks omitted) ). Instead, "to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, *inter alia*, the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013) (collecting cases). As the Second Circuit has stated, a supervisory defendant's personal involvement can be shown by evidence that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of [the plaintiff] by failing to act on information indicating that unconstitutional acts were occurring.

*Id.* at 139 (emphasis omitted) (quoting *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) ).

Accordingly, "supervisory liability may be imposed when an official has actual or constructive notice of unconstitutional practices and demonstrates 'gross negligence' or 'deliberate indifference' by failing to act." *Meriwether v. Coughlin*, 879 F.2d 1037, 1048 (2d Cir. 1989) (quoting *McCann v. Coughlin*, 698 F.2d 112, 125 (2d Cir. 1983) ). The Plaintiff does not allege that any of the above factual circumstances are present here.

Second, the Plaintiff does not even allege that the Governor supervises the NYSP. Indeed, the complaint does not contain any allegations that are specific to Governor Cuomo.

Furthermore, as to the Plaintiff's argument that he should be permitted to maintain suit against Governor Cuomo until he has been afforded an opportunity to identify subordinate officials who have personal liability, the Plaintiff does not meet that "exception" to the supervisory liability rule here. The case cited by the Plaintiff for this very proposition held "[p]ermitting plaintiffs to use discovery as a fishing expedition undermines the principle that only portions of a complaint which satisfy a plausibility standard, *i.e.,* more than possible and less than probable, should unlock the doors of discovery." *Dudek v. Nassau Cty. Sheriff's Dep't*, 991 F. Supp. 2d 402, 414 (E.D.N.Y. 2013) (internal citations and quotation marks omitted).

**\*7** The *Dudek* court relied on the fact that the complaint failed to contain a single factual allegation that any of the supervisory defendant's subordinates were personally involved in the action. Here too, the Plaintiff does not allege that Governor Cuomo supervises members of the NYSP, nor does he allege any specific acts by any individual John Doe officers of the NYSP. Nor would the Plaintiff be permitted to avail himself of the exception allowing discovery to go forward where a litigant raises colorable claims against supervisors because that exception only applies to *pro se* litigants. *See Davis v. Kelly*, 160 F.3d 917, 922 (2d Cir. 1998) ("We therefore hold that when a *pro se* plaintiff brings a colorable claim against supervisory personnel, and

2018 WL 1832929

those supervisory personnel respond with a dispositive motion grounded in the plaintiff's failure to identify the individuals who were personally involved, under circumstances in which the plaintiff would not be expected to have that knowledge, dismissal should not occur without an opportunity for additional discovery."); *Soto v. Brooklyn Corr. Facility*, 80 F.3d 34, 34 (2d Cir. 1996) (holding that where a pro se litigant mistakenly failed to name the individual corrections officers who might be liable, the pro se plaintiff would be afforded opportunity to amend his complaint after discovery); *Satchell v. Dilworth*, 745 F.2d 781, 785 (2d Cir. 1984) (same).

Finally, the Plaintiff is also unable to bring claims against Governor Cuomo based on his allegation that the NY SAFE Act is unconstitutional. The Court notes again that the Plaintiff does not seek an order stating that the NY SAFE Act is unconstitutional. He instead alleges that it is unconstitutional, and seeks an order requiring the Defendants to afford victims of gun seizures fair hearings.

In any event, the Plaintiff has not alleged that the Governor has any duty to enforce the NY SAFE Act. Nor does N.Y. PENAL LAW § 400, the only specific statute cited by the Plaintiff, afford any duty or power to the Governor. To the extent that the Plaintiff relies on the fact that the NY SAFE Act was signed by Governor Cuomo, which the Court notes that he did not allege, "[t]he well-settled doctrine of absolute legislative immunity ... bars actions against legislators or governors ... on the basis of their roles in enacting or signing legislation." *Warden v. Pataki,* 35 F.Supp.2d 354, 358 (S.D.N.Y. 1999), *aff'd sub nom. Chan v. Pataki,* 201 F.3d 430 (2d Cir. 1999). Furthermore, "the vast majority of courts ... have held ... that a state official's duty to execute the laws is not enough by itself to make that official a proper party in a suit challenging a state statute." *Warden,* 35 F. Supp. 2d at 359.

Therefore, the Plaintiff has failed to allege that Governor Cuomo has the power or duty to take action regarding the NY SAFE Act, and the Governor has sovereign immunity over those claims.

Accordingly, the Defendants' motion to dismiss the Plaintiff's claims against Governor Cuomo is granted.

### III. CONCLUSION

For the reasons stated above, the Defendants' motion to dismiss the complaint based on sovereign immunity is granted in its entirety. The Clerk of the Court is respectfully directed to close the case.

It is **SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2018 WL 1832929

---

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

Case 6:25-cv-01298-AJB-ML    Document 5    Filed 04/23/26    Page 40 of 75

2007 WL 4145456
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Lawrence L. FINKELMAN, Plaintiff,

v.

NEW YORK STATE POLICE, Unknown Governmental Entities-John Doe's-Jane Doe's 1-100, Defendants.

No. 06 Civ. 8705(JSR).
|
Nov. 15, 2007.

*ORDER*

JED S. RAKOFF, District Judge.

**\*1** On August 20, 2007, the Honorable Kevin Nathaniel Fox, United States Magistrate Judge, issued a Report and Recommendation in the above-captioned matter recommending that plaintiff's claims against defendant New York State Police be dismissed but that in all other respects the defendant's motion to dismiss the complaint be denied. Subsequently, on September 17, 2007, defendant New York State Police submitted objections to certain portions of the Report and Recommendation. Accordingly, the Court has reviewed the motion and the underlying record *de novo.*

Having done so, the Court finds itself in complete agreement with Magistrate Judge Fox's Report and Recommendation and hereby adopts its reasoning by reference. Accordingly, the Court dismisses the claims against the New York State Police, with prejudice, but denies the motion to dismiss in all other respects. The Clerk of the Court is directed to close document number 4 in the Court's docket.

There is, however, an issue as to the remaining defendants that was only raised now before this Court and that needs to be addressed by the Magistrate Judge in the first instance, viz., whether the remaining defendants have been actually served and, if not, whether belated service at this point would be untimely and prejudicial. Accordingly, the Court remands the case to Magistrate Judge Fox to issue a Report and Recommendation on the issue of whether defendants "Unknown Governmental Entities-John Doe's-Jane Doe's 1-100" have been served in this action and whether, if they have not been, the claims against those defendants should be dismissed pursuant to Federal Rule of Civil Procedure 4(m) or otherwise, and with or without prejudice.

SO ORDERED.

### REPORT & RECOMMENDATION

KEVIN NATHANIEL FOX, United States Magistrate Judge.

TO THE HONORABLE JED S. RAKOFF, UNITED STATES DISTRICT JUDGE

### I. INTRODUCTION

2007 WL 4145456

Plaintiff Lawrence L. Finkelman ("Finkelman"), proceeding *pro se,* commenced this action pursuant to 42 U.S.C. §§ 1983, 1985, and 1986, against New York State Police and "Unknown Government Entities-John Doe's-Jane Doe's 1-100" ("defendants"). He contends the defendants conspired to violate his civil rights when, in 2001, without a warrant or probable cause, they forced him from his vehicle by threatening him with physical harm, arrest, and criminal charges, and locked him in their patrol car, thus violating both New York and federal penal laws. Finkelman alleges the conspiracy continued when the defendants twice filed false documents in New York State courts in the years that followed.

Before the Court is the defendants' motion, made pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, to dismiss the claim against defendant New York State Police because the Eleventh Amendment bars suit against a state and its agencies. The defendants also contend Finkelman's claims are barred by a three-year statute of limitations and, as such, permitting him to amend the complaint would be futile. [1] Finkelman opposes the defendants' motion to dismiss and their contention that the applicable statute of limitations has expired.

## II. BACKGROUND

**\*2** Finkelman maintains that some time prior to November 28, 2001, the defendants, acting under the color of law, conspired to kidnap and arrest him unlawfully in violation of the Fourth, Fifth, Eighth and Fourteenth Amendments. He contends the defendants' actions constitute violations of federal and state criminal statutes: 18 § U .S.C. 1201 and New York Penal Law § 135.20. According to Finkelman, on November 28, 2001, the defendants lay in wait for him on Interstate Highway 87 and ordered him out of his car. Finkelman alleges the defendants acted without a warrant or probable cause to believe he had committed an offense. Finkelman recalls the defendants threatened to use deadly force and to arrest and charge him for acts he never committed. Finkelman also alleges that "[t]he defendants [,] upon learning that the plaintiff had the evidence from the [ ] grand larceny in his possession [,] locked the plaintiff up in the back [of] their patrol vehicle," and continued to threaten him while he was in their custody. Finkelman maintains the defendants destroyed the evidence he possessed and asked him if he was going to accuse them of grand larceny.

Finkelman alleges that, on November 3, 2004, "[d]efendants knowingly filed a fraudulent and perjurious complaint against the plaintiff" to further the goals of their conspiracy and to prosecute a "malicious, fradulent and perjurious lawsuit." According to the plaintiff, the defendants engaged in similar misconduct on October 31, 2005, December 28, 2005, and twice on December 29, 2005, when they filed documents related to him, which they knew to be false and perjurious.

Finkelman alleges the defendants "knowingly failed to disclose to the plaintiff, and actively took steps to conceal material information and criminal acts known only to the Defendants regarding the herein criminal violation of the Constitution and laws of the United States and New York," in order to "prevent the plaintiff from filing criminal complaints and making public the criminal acts [enumerated in the instant complaint] and corruption."

Finkelman contends the defendants violated his Sixth and Seventh Amendment rights by using their official positions to deny him the right to a speedy trial, a jury trial, and "compulsory process for obtaining witnesses." Finkelman also contends that the defendants had the opportunity and authority to stop the civil rights violations he alleges were perpetrated, but they declined to do so. According to Finkelman, all the defendants' acts were committed to shield them from prosecution and to intimidate him because the defendants knew he was "a plaintiff and witness in a felony criminal matter against them. [Therefore, [t]he [d]efendants [ ] threatened and intimidated [him] to deter him from attending, testifying and initiating a criminal complaint and/ or suit in a State Court of the United States and to interfere with judicial proceedings."

On October 26, 2006, Finkelman commenced the instant action. Thereafter, on November 2, 2006, he amended his complaint by removing, as defendants to the action: "State of New York;" "John Doe 1-20;" and "Jane Doe 1-20" and replacing them with the following defendants: "New York State Police" "Unknown Government Entities-John Doe's-Jane Doe's 1-100." Finkelman has also included, in his amended complaint, a request that the court direct the defendants to disclose to him documents which

**Finkelman v. New York State Police, Not Reported in F.Supp.2d (2007)**

2007 WL 4145456

will enable him to learn the names of the individual defendants and, thereafter, serve them with process. Finkelman has asked, *inter alia,* that the court grant him injunctive relief and direct the defendants to avoid contacting any potential witnesses unless he is present.

### III. DISCUSSION

**\*3** A court may dismiss an action pursuant to Fed.R.Civ.P. 12(b) (1), for lack of subject matter jurisdiction, only if "it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to relief." *Raila v. United States,* 355 F.3d 118, 119 (2d Cir.2004). In considering a motion made pursuant to Fed.R.Civ.P. (12)(b)(1), "[a] court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *Id.* Further, "[o]n a motion invoking sovereign immunity to dismiss for lack of subject matter jurisdiction, the plaintiff bears the burden of proving by a preponderance of evidence that jurisdiction exists." *Chayoon v. Chao,* 355 F.3d 141, 143 (2d Cir.2004) (quoting *Garcia v. Akwesasne Hous. Auth.,* 268 F.3d 76, 84 (2d Cir.2001).

"In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court ... may refer to evidence outside the pleadings." *See Makarova v. United States* 201 F.3d 110, 113 (2d Cir.2000). Additionally, where, as here, the plaintiff is appearing *pro se,* his or her pleadings "are [to be] held 'to less stringent standards than formal pleadings drafted by lawyers,' " *Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 176 (1980) (quoting *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595 [1972] ), and should be interpreted "to raise the strongest arguments that they suggest." *McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir.1999) (quoting *Burgos v. Hopkins,* 14 F.3d 787, 790 [2d Cir.1994] ). This liberal pleading standard is particularly applicable where a *pro se* plaintiff alleges a violation of his or her civil rights. *See Jacobs v. Ramirez,* 400 F.3d 105, 106 (2d Cir.2005).

In their motion to dismiss, the defendants contend that the Eleventh Amendment bars suit against the state of New York and its agencies and, as a result, defendant New York State Police is immune from suit. Finkelman responds that states "must first be in compliance with the Constitution and the laws of the United States" before the Eleventh Amendment is to be applied.

Under the Eleventh Amendment, a state or an arm of a state may not be sued in a federal court absent the state's consent. *See Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc.,* 506 U.S. 139, 144, 113 S.Ct. 684, 687-88 (1993) (citations omitted). Defendant New York State Police is an arm of the state, and therefore an action brought against it is a suit against the state. *See, e.g., Morrongiello v. Ashcroft,* No. 01 Civ. 2524, 2004 WL 112944, at \*2 (S.D.N.Y. Jan. 22, 2004). Sections 1983 and 1985 of Title 42 were not intended to abrogate the states' immunity. *See Degrafinreid v. Ricks,* No. 03 Civ. 6645, 2004 WL 2793168, at \*5 (S .D.N.Y. Dec. 6, 2004). The state of New York has not consented to suit in federal court under: (a) 42 U.S.C. § 1983, *see Le Grand v. Evan,* 702 F.2d 415, 417 (2d Cir.1983); (b) 42 U.S.C. § 1985, *see Quirk v. City of New York,* No. 03 Civ. 0324, 2003 WL 1872714, at \*1 (S.D.N.Y. Apr. 10, 2003); or (c) 42 U.S.C. § 1986, *see Gasparik v. Stony Brook University,* No. CV-05-3817, 2007 WL 2026612, at \*4 (E.D.N.Y. July 9, 2007).

**\*4** Accordingly, Finkelman's claims against defendant New York State Police should be dismissed. However, the complaint contains claims against "John Does and Jane Does 1-100," which the defendants have not addressed. Therefore, dismissal of the entire complaint is not warranted at this time.

### IV. RECOMMENDATION

For the reasons set forth above, the defendants' motion to dismiss the complaint should be denied. The claims against defendant New York State Police should be dismissed.

2007 WL 4145456

## V. FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have ten (10) days from service of the Report to file written objections. *See also* Fed.R.Civ.P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Jed S. Rakoff, United States District Judge, 500 Pearl St., Room 1340, New York, New York 10007, and to the chambers of the undersigned, 40 Centre St., Room 540, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge Rakoff. FAILURE TO FILE OBJECTIONS WITHIN TEN (10) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. *See Thomas v. Arn,* 474 U.S. 140 (1985); *IUE AFL-CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.1992); *Wesolek v. Candair Ltd.,* 838 F .2d 55, 57-59 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237-38 (2d Cir.1983).

**All Citations**

Not Reported in F.Supp.2d, 2007 WL 4145456

---

**Footnotes**

1    The defendants have failed to make a proper motion addressing their statute of limitations defense. Therefore, the Court has determined not to analyze that defense in this writing.

---

**End of Document**                                      © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2005 WL 1705523
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Robert MILTON a/k/a Robert Brown, Plaintiff,
v.
David ALVAREZ, James Verdicchio, Phillip Scandale, Raphael Nieves, and
the Trustees of Columbia University in the City of New York, Defendants.

No. 04 Civ. 8265SAS.
|
July 19, 2005.

**Attorneys and Law Firms**

Robert Milton a/k/a Robert Brown, 02-A-5716, Eastern Correctional Facility, Napanoch, New York, Plaintiff pro se.

Laura D. Barbieri, Schoeman, Updike & Kaufman, LLP, New York, New York, Sarah B. Evans, Assistant Corporation Counsel, New York, New York, for Defendants.

*OPINION AND ORDER*

SCHEINDLIN, J.

I. INTRODUCTION

 **\*1**  Robert Milton, an incarcerated inmate proceeding pro se, brings this action pursuant to, *inter alia,* section 1983 of Title 42 of the United States Code ("section 1983") alleging that he was deprived of his civil rights. Specifically, Milton seeks monetary damages for false arrest, false imprisonment, malicious prosecution, abuse of process, intentional infliction of emotional distress, and prima facie tort. Milton alleges that on October 5, 2001, he was falsely arrested for trespassing on Columbia University's campus and falsely accused of committing burglaries on that campus on September 11, 2001 and September 26, 2001. Furthermore, Milton alleges that he was maliciously prosecuted for these burglaries. In addition to New York City Police Officers Raphael Nieves and Phillip Scandale ("City defendants"), Milton also names Columbia University and Columbia University security personnel James Verdicchio and David Alvarez (collectively "Columbia University defendants") as defendants in this action. The City defendants, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and the Columbia University defendants, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, move to dismiss all of Milton's claims. For the reasons set forth below, defendants' motions to dismiss are granted.

II. BACKGROUND [1]

  A. The Arrest

On October 5, 2001, Milton was stopped and questioned on Columbia University's campus by Columbia University security officer David Alvarez. [2] When asked for identification, Milton could not produce a proper Columbia University identification card. [3] Alvarez testified before a Grand Jury that his attention was directed to Milton because he observed him pull on the handle of a locked building, look into the doorway of another building, and enter a third dormitory building for a brief period. [4] When Alvarez asked why Milton was on Columbia University's property, he responded that he was visiting a Columbia student. [5]

However, Columbia had no record of the student Milton claimed to be visiting.[6] Alvarez handcuffed Milton and escorted him to the Security Office at Columbia University where he was detained for trespassing.[7] After Alvarez called the New York City Police Department ("NYPD"), Officer Phillip Scandale arrived at the Security Office, spoke with Alvarez, and subsequently arrested Milton.[8] Officer Scandale transported plaintiff to the 26th Precinct where he was processed on trespassing charges.[9]

### B. The Criminal Charges

At the 26th Precinct, Milton claims he was questioned by Officer Raphael Nieves, a detective with the NYPD, about burglaries that occurred on Columbia University's campus on September 11, 2001 and September 26, 2001.[10] Alvarez testified before a Grand Jury that he viewed the security tapes from September 11, 2001 and September 26, 2001, and recognized Milton as the person leaving the campus with a laptop on both days.[11] Nieves also testified that he viewed the tapes after Milton arrived at the 26th Precinct as part of his investigation before arresting Milton for burglary.[12] In February 2002, Milton was indicted for Burglary in the Second Degree for both burglaries (September 11 and September 26) under Indictment Number 778-2002.[13] In addition, Milton was indicted for the crime of Burglary in the Second Degree, occurring on September 19, 2001, and Attempted Burglary in the Third Degree, occurring on October 5, 2001, under Indictment Number 6206-2001.[14] Both indictments stemmed from Milton's arrest on October 5, 2001. The Supreme Court of the State of New York, Criminal Term, consolidated the two indictments and Milton was tried by a single jury for all charges resulting from his October 5, 2001 arrest.[15]

### C. The Jury's Verdict and Sentencing

 **\*2** On September 4, 2002, the jury returned a verdict.[16] Milton was found not guilty for the September 11, 2001 burglary and trespass.[17] The jury found Milton guilty of the September 19 Burglary in the Second Degree and the October 5 Attempted Burglary in the Third Degree.[18] The jury hung on the burglary charge arising from the September 26, 2001 incident.[19] All counsel agreed to accept a partial verdict and the charge of Burglary in the Second Degree based on the September 26, 2001 incident was dismissed .[20]

Milton was sentenced to fifteen years for Burglary in the Second Degree and to two-to-four years for Attempted Burglary in the Second Degree.[21] The sentences were to run consecutively.[22] Milton appealed to the New York State Supreme Court, Appellate Division, First Department.[23] The appellate court did not reverse his convictions but, in the interests of justice, modified the trial court's sentence for Burglary in the Second Degree from fifteen years to twelve years and directed that the consecutive two-to-four year sentence for Attempted Burglary in the Third Degree run concurrently.[24] Milton is currently serving his sentence at the Eastern Correctional Facility.[25]

### III. LEGAL STANDARD

The standard governing a motion for judgment on the pleadings, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, is the same as that applied to a Rule 12(b)(6) motion.[26] Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint should be dismissed if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."[27] The focus is on the legal sufficiency of the complaint, not on whether a plaintiff is likely to ultimately prevail.[28] Thus, the function of the court in ruling on a motion to dismiss "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof."[29] "This standard is applied with even greater force where the plaintiff alleges civil rights violations or where the complaint is submitted pro se."[30]

2005 WL 1705523

When deciding a motion to dismiss pursuant to Rule 12(b)(6), a court accepts as true all factual allegations made in the complaint and draws all reasonable inferences in favor of the plaintiff. [31] A district court must limit itself to a consideration of factual material presented in the plaintiff's complaint, any written instrument attached to the complaint as an exhibit, documents incorporated in the complaint by reference, and any other documents integral to the complaint. [32] In addition, judicial notice may be taken of matters found in the public record if such facts are and records are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned" [33]

The allegations in a pro se plaintiff's complaint should be liberally construed. [34] However, " '[a]lthough less stringent standards apply where, as here, a litigant is pro se, dismissal is nevertheless appropriate where it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." ' [35]

## IV. DISCUSSION

### A. The State Action Requirement for a Section 1983 Claim

**\*3** By enacting section 1983, Congress provided a remedy for a claimed violation of the Fourteenth Amendment's guarantee that no state shall deprive any person of life, liberty or property without due process of law. [36] Two allegations are required to state a claim under section 1983. *First,* a plaintiff must allege a deprivation of a federal right. [37] *Second,* a plaintiff must demonstrate that the person who caused the deprivation of that right was either a state actor or acted under color of state law. [38] The Supreme Court has noted that in cases arising under section 1983, under color of law has been treated as equivalent to state action required by the Fourteenth Amendment. [39]

Columbia University and its employees comprise a private, rather than a state-created, entity. [40] For private action to be considered state action, "the conduct allegedly causing the deprivation of a federal right [must] be fairly attributable to the State." [41] "A merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a [section] 1983 claim against the private entity." [42] Instead, there must be a sufficiently high level of entanglement between the state and the private actor such that the latter can be considered the state itself. [43]

Milton's Complaint does not allege sufficient state action by the Columbia University defendants to satisfy the entanglement standard. The complaint is silent as to any facts indicating that the state is pervasively entwined with Columbia University and its employees. [44] Milton has made no allegation that the state has played any role whatsoever in Columbia University's day-to-day operations. Without facts specifically demonstrating a high level of entanglement between the state and Columbia University, the Columbia University defendants cannot be considered state actors. Therefore, because Columbia University and its employees are not state actors, and Milton has not alleged sufficient facts to support the conclusion that they acted under color of state law, his section 1983 claims against the Columbia University defendants must be dismissed. [45]

### B. False Arrest and Malicious Prosecution

A section 1983 claim for false arrest arises under the Fourth Amendment right to be free from unreasonable seizures and is identical to a claim for false arrest under New York law. [46] False arrest and false imprisonment are synonymous under New York law. [47] To establish a claim for false arrest or false imprisonment, a plaintiff must show that "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." [48]

A claim for malicious prosecution is distinct from an action for false arrest or false imprisonment because each is composed of different elements and protects a different interest. [49]  In order to establish a claim for malicious prosecution under section 1983, a plaintiff must also allege all the elements of malicious prosecution under state law. [50]  Under New York law, to prevail on a claim of malicious prosecution, a plaintiff must show "(1) that the defendant initiated a prosecution against the plaintiff, (2) that the defendant lacked probable cause to believe the proceeding could succeed, (3) that the defendant acted with malice, and (4) that the prosecution was terminated in the plaintiff's favor." [51]

 **\*4**  The existence of probable cause to arrest is a complete defense to both a false arrest and a malicious prosecution claim. [52]  "In general, probable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." [53]

The facts which this Court is permitted to consider establish, as a matter of law, that defendants had probable cause to arrest Milton on October 5, 2001. Alvarez detained Milton after apprehending him on Columbia University's campus without a proper student identification card. Milton was questioned after Alvarez saw him pulling the handle of a locked building, looking into the doorway of another building, and entering a student dormitory for a brief period. In addition, there was no record of the student whom Milton claimed he was visiting. "[P]robable cause for an arrest must be determined on the basis of the information reasonably available to the arresting officer at the time of the arrest...." [54]  Based on the facts provided to Officer Scandale by security officer Alvarez upon his arrival, it was reasonable for Officer Scandale to conclude that Milton had committed a crime on Columbia University's property.

Probable cause is not proof beyond a reasonable doubt. These facts could lead a reasonable officer to conclude that Milton committed, or planned to commit, a burglary on Columbia University's campus. Therefore, based on the information available at the time of arrest, there was probable cause to arrest Milton for both trespassing and burglary.

The fact that Milton was indicted by a Grand Jury for all charges stemming from the October 5, 2001 arrest provides further evidence of the existence of probable cause. [55]  In order to rebut the presumption of probable cause created by an indictment, a plaintiff must produce evidence showing that the indictment was procured "by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." [56]  Because Milton has made no such allegation, the presumption of probable cause to arrest stemming from the indictment is not refuted. In conclusion, because defendants had probable cause to arrest Milton, his false arrest and malicious prosecution claims are dismissed as to all defendants.

Although the existence of probable cause to arrest is fatal to a plaintiff's malicious prosecution claim, two other essential elements are absent from Milton's claim. *First,* his claim does not allege any specific facts showing the existence of malice on the part of any of the defendants. In addition, the absence of a final determination in Milton's favor precludes recovery for malicious prosecution. In order to establish that a termination was favorable, "the plaintiff must show that the final disposition is indicative of innocence." [57]  The jury found Milton guilty on the charges of Burglary in the Second Degree (September 19, 2001) and Attempted Burglary in the Third Degree (October 5, 2001). Although the jury found Milton not guilty of Burglary in the Second Degree for the September 11, 2001 incident, the jury hung on the charge of Burglary in the Second Degree for the September 26, 2001 incident. [58]  "A prosecution based on probable cause which results in a hung jury, as was the case here, does not deprive the defendant of civil rights within the meaning of section 1983." [59]  A hung jury leaves the defendant's guilt open and a claim for malicious prosecution based on that prosecution must fail. [60]  Thus, because Milton has not and cannot plead a favorable termination of the charges stemming from the events of September 26, 2001, his malicious prosecution claim must be dismissed.

  C. Intentional Infliction of Emotional Distress, Abuse of Process and Prima Facie Tort

**\*5**  Under New York law, to state a valid claim for intentional infliction of emotional distress, a plaintiff must show: "(1) extreme and outrageous conduct, (2) intent to cause severe emotional distress (3) a causal connection between the conduct and the injury, and (4) severe emotional distress."[61]  To satisfy the first element, the conduct must have been "so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."[62]  Milton's Complaint does not allege any conduct that meets this high standard of outrageousness. As a result, Milton's claim for intentional infliction of emotional distress is dismissed.

"Abuse of process has three essential elements: (1) regularly issued process, either civil or criminal, (2) an intent to do harm without excuse or justification, and (3) use of process in a perverted manner to obtain a collateral objective."[63]  A valid claim for abuse of process requires an allegation of an improper use of process that is inconsistent with its normal use.[64]  Milton's Complaint alleges that he was falsely identified as a suspect in the September 11, 2001 and the September 26, 2001 burglaries. However, the Complaint fails to allege that any defendant intended to cause harm or intended to use the process in a perverted manner or for a collateral objective. Therefore, Milton's abuse of process claim must be dismissed.

"Prima facie tort is defined as the infliction of intentional harm, resulting in damages, without excuse or justification, by an act or series of acts which would otherwise be lawful."[65]  An essential element of the cause of action for prima facie tort is an allegation of special damages.[66]  Milton's Complaint fails to plead any special damages. In addition, similar to his abuse of process claim, Milton's prima facie tort claim fails to allege the infliction of intentional harm by any of the defendants. Thus, Milton's prima facie tort claim is dismissed.

V. CONCLUSION

For the reasons stated above, City defendants' motion to dismiss plaintiff's claims pursuant to Rule 12(b)(6) and Columbia University defendants' motion to dismiss pursuant to Rule 12(c) are granted. The Clerk of the Court is directed to close these motions [Document # 15] and this case.

   SO ORDERED:

**All Citations**

Not Reported in F.Supp.2d, 2005 WL 1705523

---

**Footnotes**

1       Many of the documents cited herein consist of public records of which judicial notice may be taken for purposes of the instant motions. *See infra* Part III.

2       *See* Complaint, § IV ("Compl.").

3       *See* New York City Police Department Complaint Report, Details section, ("NYPD Compl."), 2001-026-004198, Ex. B of Plaintiff's Opposition to Defendants' Motions to Dismiss. *See also* People's Voluntary Disclosure Form, Docket No. 2001ny078593, Ex. D of Plaintiff's Opposition to Defendants' Motions to Dismiss.

4       *See* Grand Jury Testimony of Alvarez, Ex. E of Plaintiff's Opposition to Defendants' Motions to Dismiss.

5       *See* NYPD Compl.

Case 6:25-cv-01298-AJB-ML    Document 5    Filed 04/23/26    Page 49 of 75
Milton v. Alvarez, Not Reported in F.Supp.2d (2005)
2005 WL 1705523

6      *See id.*

7      *See* Compl. at § IV

8      *See id.*

9      *See id.*

10     *See id.*

11     *See* Grand Jury Testimony of Alvarez at 14, Ex. E of Plaintiff's Opposition to Defendants' Motions to Dismiss.

12     *See* Grand Jury Testimony of Nieves at 21-22, Ex. E of Plaintiff's Opposition to Defendants' Motions to Dismiss.

13     *See* Compl. at § IV; Grand Jury Ind. No. 778/02, Ex. B of City Defendant's Motion to Dismiss.

14     *See* Compl. at § IV; Grand Jury Ind. No. 6206/01, Ex. C of City Defendant's Motion to Dismiss.

15     *See* Memorandum Decision, ¶ 5, dated May 2, 2002, Ex. D of City Defendant's Motion to Dismiss.

16     *See* Transcript of Criminal Proceedings for Robert Milton a/k/a Robert Brown on September 4, 2002 ("Crim.Proc.Tr."), Supreme Court of the State of New York: Criminal Term, Ex. E of Columbia Defendants' Motion to Dismiss.

17     *See id.* at 372.

18     *See id.*

19     *See id.* at 370-71.

20     *See id.* at 371.

21     *See* Certificate of Disposition dated 3/21/2005, Indictment Number 3280, Ex. F of City Defendants' Motion to Dismiss.

22     *See id.*

23     *See People v. Brown,* 8 A.D.3d 144 (1st Dep't 2004).

24     *See id.*

25     *See* Compl. at § II.

26     *See Irish Lesbian and Gay Org. v. Giuliani,* 143 F.3d 638, 644 (2d Cir.1998).

27     *Curto v. Edmundson,* 392 F.3d 502, 503 (2d Cir.2004) (internal quotation marks and citation omitted).

28     *See Velez v. Levy,* 401 F.3d 75, 84 (2d Cir.2005).

29     *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.,* 375 F.3d 168, 176 (2d Cir.2004) (internal quotation marks and citation omitted).

30     *See Thompson v. Carter,* 284 F.3d 411, 416 (2d Cir.2002).

31     *See Chambers v. Time Warner Inc.,* 282 F.3d 147, 152 (2d Cir.2002).

32     *See id.* at 152-53; Fed.R.Civ.P. 10(c).

33    Fed.R.Evid. 201(b)(2). *See also Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir.1991).

34    *See Haines v. Kerner,* 404 U.S. 519, 520-21 (1972). *See also McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir.1999) (stating pro se plaintiff's papers are interpreted to raise the strongest arguments that they suggest).

35    *Washington v. Kelly,* No. 03 Civ. 4638, 2004 WL 830084, at *2 (S.D.N.Y. Aug. 13, 2004) (quoting *Rodriguez v. Weprin,* 116 F.3d 62, 65 (2d Cir.1997)).

36    *See Dahlberg v. Becker,* 748 F.2d 85, 88 (2d Cir.1984).

37    *See Gomez v. Toledo,* 446 U.S. 635, 640 (1980). *See also Dwyer v. Regan,* 777 F.2d 825, 828 (2d Cir.1985) (requiring that plaintiff allege conduct causing the deprivation of "a right, privilege, or immunity secured by the Constitution or laws of the United States").

38    *See Gomez,* 446 U.S. at 640.

39    *See Lugar v. Edmondson Oil Co., Inc.,* 457 U.S. 922, 928 (1982).

40    *See* Encyclopedia Britannica Online (last visited July 6, 2005) (stating Columbia University is a private university), *available at* http:// www. britannica.com/ebc/article?to cId=9361194 & query=ColumbiaÜniversity & ct=.

41    *Lugar,* 457 U.S. at 937.

42    *Ciambriello v. County of Nassau,* 292 F.3d 307, 324 (2d Cir.2002).

43    *See Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 350 (1974) ("[T]he inquiry must be whether there is a sufficiently close nexus between the State and the challenged action of the ... [private] entity so that the action of the latter may be fairly treated as that of the State itself."); *Leeds v. Meltz,* 85 F.3d 51, 54 (2d Cir.1996) (requiring that the state exert coercive power over, or provide significant encouragement to, the private entity before the latter's conduct will be deemed state action).

44    *See Brentwood Acad. v. Tennessee Secondary Sch.,* 531 U.S. 291, 296 (2001) (identifying a number of criteria demonstrating that private conduct is fairly attributable to the state, such as an activity resulting from the state's coercive power, the state providing significant encouragement to the private entity, the private actor acting as a wilful participant in a joint activity with the state, the delegation to the private entity of a traditionally public function, the private entity's entwinement with the state's policies, and the state's entanglement in the private actor's management or control).

45    Even assuming that the Columbia University defendants were state actors, plaintiff's claims against them would still be dismissed for the reasons discussed below.

46    *See Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir.1996). *See also Hygh v. Jacobs,* 961 F.2d 359, 366 (2d Cir.1992).

47    *See Singer v. Fulton County Sheriff,* 63 F.3d 110, 118 (2d Cir.1995) (noting false arrest and false imprisonment have identical elements). *See also Posr v. Doherty,* 944 F.2d 91, 96 (2d Cir.1991).

48    *Bernard v. United States,* 25 F.3d 98, 103 (2d Cir.1994).

49    *See Weyant,* 101 F.3d at 853.

50    *See Fulton v. Robinson,* 289 F.3d 188, 195 (2d Cir.2002). *See also Janetka v. Dabe,* 892 F.2d 187, 189 (2d Cir.1989) ("A claim of malicious prosecution brought pursuant to section[ ] 1983 ... is governed by state law in the absence of federal common law.").

2005 WL 1705523

51    *Posr v. Court Officer Shield No. 207,* 180 F.3d 409, 417 (2d Cir.1999) (citing *Ricciuti v. N.Y.C Transit Auth.,* 124 F.3d 123, 130 (2d Cir.1997)).

52    *See Gaskins v. City of New York,* No. 03 Civ. 0605, 2004 WL 1777585, at *2 (S.D.N.Y. Aug. 6, 2004) (citing *Hyde v. Arresting Officer Caputo,* No. 98 Civ. 6722, 2001 WL 521699, at *2-4 (E.D.N.Y May 11, 2001)).

53    *Id.* (internal quotation marks and citation omitted). *Accord Atwater v. City of Lago Vista,* 532 U.S. 318, 354 (2001) ("If an officer has probable cause to believe than an individual has committed even a very minor criminal offense ... he may, without violating the Fourth Amendment, arrest the offender.").

54    *Lowth v. Town of Cheektowaga,* 82 F.3d 563, 570 (2d Cir.1996).

55    *See Bernard,* 25 F.3d at 104 (noting that an indictment returned by a Grand Jury creates a presumption that the arrest was procured with probable cause).

56    *Id.*

57    *Russell v. Smith,* 68 F.3d 33, 36 (2d Cir.1995). *Accord Singleton v. City of New York,* 632 F.2d 185, 193 (2d Cir.1980) (requiring that a favorable termination indicate that the accused is not guilty).

58    In *Janketa,* the Second Circuit highlighted the importance of separately analyzing the charges a plaintiff claims were maliciously prosecuted. A termination that was not favorable on one charge should not preclude a claim of malicious prosecution for another charge in the same proceeding. This is especially true where the charges have distinct facts and arise from separate occurrences. However, here the two burglary incidents are too factually similar to apply the holding of *Janketa.*

59    *Singleton,* 632 F.2d at 195.

60    *See id.*

61    *Bender v. City of New York,* 78 F.3d 787, 790 (2d Cir.1996).

62    *Murphy v. American Home Prods. Corp.,* 461 N.Y.S.2d 232, 236 (1983).

63    *Curiano v. Suozzi,* 480 N.Y.S.2d 466, 468 (1984).

64    *See id.*

65    *Howard v. Block,* 454 N.Y.S.2d 718, 719 (1st Dep't 1982). *Accord Curiano,* 480 N.Y.S.2d at 469.

66    *See Howard,* 454 N.Y.S.2d at 719.

---

**End of Document**                    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2018 WL 2108284

2018 WL 2108284
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Shaun P. GARVEY, Plaintiff,

v.

WEGMANS, Onondaga County Sheriff's Department, Defendants.

5:18-CV-00255 (TJM/TWD)
|
Signed 04/12/2018

**Attorneys and Law Firms**

SHAUN P. GARVEY, P.O. Box 12, Liverpool, New York 13090, pro se.

### ORDER AND REPORT-RECOMMENDATION

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## I. INTRODUCTION

 **\*1**  The Clerk has sent to the Court for initial review the complaint in this 42 U.S.C. § 1983 civil rights action brought by *pro se* Plaintiff Shaun P. Garvey against Defendants Wegmans and the Onondaga Sheriff's Department ("Sheriff's Department"). (Dkt. No. 1.) Also before the Court are Plaintiff's application for leave to proceed *in forma pauperis* ("IFP Application") and motion for appointment of counsel. (Dkt. Nos. 2 and 3.)

## II. IFP APPLICATION

The Court finds that Plaintiff has demonstrated the requisite economic need to proceed with this matter *in forma pauperis.* As a result, Plaintiff's IFP Application (Dkt. No. 2) is granted.

## III. LEGAL STANDARD FOR INITIAL REVIEW OF COMPLAINT

Even when a plaintiff meets the financial criteria for *in forma pauperis*, 28 U.S.C. § 1915(e) directs that when a plaintiff proceeds *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that ... the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must look to see whether the complaint lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). "An action is frivolous when either: (1) the factual contentions are clearly baseless such as when the claims are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory." *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) (citations and internal quotation marks omitted). Although extreme caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to respond, *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983), the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *See, e.g., Thomas v. Scully*, 943 F.2d 259, 260 (2d Cir. 1991) (per curiam) (holding that a district court has the power to dismiss a complaint *sua sponte* if the complaint is frivolous).

To survive dismissal for failure to state a claim, a complaint must plead enough facts to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While Rule 8(a) of the Federal Rules of Civil Procedure, which sets forth the general rules of pleading, "does not require detailed factual allegations, ... it demands more than an unadorned, the-defendant-harmed-me accusation." *Id.* In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir.), *cert. denied,* 513 U.S. 836 (1994) (citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

 **\*2**  Where a plaintiff proceeds *pro se*, the pleadings must be read liberally and construed to raise the strongest arguments they suggest. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (citation omitted). A *pro se* complaint should not be dismissed "without giving leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal quotation marks omitted). An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## IV. PLAINTIFF'S COMPLAINT

Plaintiff alleges that Wegmans and the Sheriff's Department negligently handled a series of harassment complaints against Plaintiff made by Wegmans, which resulted in Plaintiff's arrest for aggravated harassment. [1] (Dkt. No. 1 at 2-4. [2]) Plaintiff alleges that he was "found criminally not guilty or [the charge] was dismissed with prejudice." *Id.* at 2. Documents Plaintiff has annexed to his complaint include an arrest report showing that he was arrested on a charge of aggravated harassment in the second degree, N.Y. Penal Law § 240.30(2). [3] *Id.* at 5.

Plaintiff claims that he: (1) was falsely imprisoned "due to sheriffs not providing a warrant, for [his] arrest and mishandling all associates paperwork"; (2) lost his apartment as a result of police presence; (3) lost his mother and money; and (4) suffered emotional distress. *Id.* at 3. Plaintiff seeks monetary damages in the amount of $15,000 from Wegmans and $25,000 from Onondaga County. *Id.* at 4.

The voluntary affidavit of Richard Wille, assistant asset protection manager at the Wegmans store on Oswego Road in Cicero, given to Sheriff's Department Deputy N. VanDyke on September 15, 2017, is also attached to the complaint. *Id.* at 6. According to Wille, on September 4, 2017, Sheriff's Department Deputy Rinaldi issued a no trespass order banning Plaintiff from all Wegmans locations after he had made a threatening call to Wegmans pharmacists. *Id.* Thereafter, Plaintiff called the store multiple times and was told to stop calling. *Id.* Wille received an email from the pharmacy manager on September 11, 2017, stating they had received threatening calls from Plaintiff.

According to Wille, he called the Sheriff's Department again on September 14, 2017, after the Oswego Road store, the service center, and pharmacy center in Rochester had received multiple calls from Plaintiff using vulgar language and threats such as "I'm going to run my car into the front of the building," and "I'm going to come in guns a blazin." *Id.* Sheriff's Department Deputy Redshaw contacted Plaintiff and told him not to call Wegmans again. *Id.* Shortly thereafter, Plaintiff called the Cicero store twenty-three times between 7:50pm and 8:49pm the evening of September 14, 2017. *Id.* Wille received a call from the Cicero store at 7:15am the next day informing him that Plaintiff was calling again. *Id.* Plaintiff called the Cicero service department eighty-four times beginning at 7:00am, the Cicero pharmacy department twenty-five times starting at 8:30am, and made multiple calls to the division office in Rochester, with the last call being made at 9:43am. *Id.* Wille thereafter contacted the Sheriff's Department and expressed a desire to prosecute Plaintiff for the harassing phone calls and threats. *Id.*

2018 WL 2108284

**\*3**  In a September 15, 2017, voluntary affidavit, Maureen E. Hall, an employee in the Cicero Wegmans pharmacy department, stated she had received multiple calls which she recognized as being from Plaintiff, with whom she had previously dealt as a customer in the store. *Id.* at 8. According to Hall, there were multiple harassing conversations in which Plaintiff said "Hey girl, I'm not going away" over and over, as well as "I will destroy you, you bitch," and "you're a cunt bag." *Id.*

Deputy VanDyke completed a Misdemeanor Information on September 15, 2017, requesting that Plaintiff be charged with aggravated harassment in the second degree for his conduct in intentionally calling the Cicero Wegmans over 100 times between 7:00am and 9:43am on September 15, 2017, using vulgar language and threatening employees with no purpose of legitimate communication. *Id.* at 14. A temporary order of protection was issued by the Cicerco Town Court on September 15, 2017, prohibiting Plaintiff from engaging in any communications with, or engaging in any harassing conduct with Wille. *Id.* at 9.

Plaintiff alleges in conclusory fashion and without factual support that there is "no supportable truth" to the claim of aggravated harassment. *Id.* at 4.

## V. ANALYSIS

### A. Plaintiff's 42 U.S.C. § 1983 Claim Against Wegmans
Plaintiff alleges that Wegmans negligently handled a series of harassment complaints against him resulting in his false arrest for aggravated harassment. (Dkt. No. 1.)

Section 1983 provides in relevant part:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured ...

42 U.S.C. § 1983. To state a claim under Section 1983, a plaintiff must allege that the challenged conduct (1) was "committed by a person acting under color of state law," and (2) "deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010) (quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994) ). "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992). The requirement that a defendant acted under "color of state law" is jurisdictional. *Lucas v. Riggi*, No. 07-CV-6200L, 2008 WL 4758706, at\*2 (W.D.N.Y. Oct. 29, 2008) [4] (citing *Polk County v. Dodson*, 454 U.S. 312, 315 (1981) ).

It is well settled that "the under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (citation and internal quotation marks omitted). A plaintiff must therefore allege facts showing that a defendant was either a state actor or a private party acting under color of state law. *Ciambriello v. County of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002); *see also United States v. Int'l Broth. of Teamsters, Chauffeurs, Warehousemen & Helpers of America*, 941 F.2d 1292, 1295-96 (2d Cir. 1991) ("Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes 'state action.' "). Private actors have been found to engage in "state action" when they are "willful participant[s] in joint activity with the State or its agents." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970) (citing *United States v. Price*, 383 U.S. 787, 794 (1966) ). "Conduct that is ostensibly private can be fairly attributed to the state only if there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the state itself." *Tancredi v. Metropolitan Life Ins. Co.*, 316 F.3d 308, 312 (2d Cir. 2003) (citations and internal quotation marks omitted).

**\*4** Wegmans is a family owned regional supermarket chain founded in 1916 and headquartered in Rochester, New York. *See* https://www.wegmans.com/about-us/company-overview.html (last visited April 11, 2018). [4] The Court, therefore, finds that Wegmans is a private actor. "The provision of information to or summoning of police officers, even if that information is false or results in the officers taking affirmative action, is not sufficient to constitute joint action with state actors for purposes of § 1983." *Young v. Suffolk Cnty.*, 705 F. Supp. 2d 183, 196 (E.D.N.Y. 2010); *see also Lienau v. Garcia*, No. 12-CV-6572 (ER), 2013 WL 6697834, at \*6 (S.D.N.Y. Dec. 19, 2013) (collecting cases).

Inasmuch as Wegmans is a private actor, and Plaintiff's allegations against Wegmans do not involve conduct that could be construed as joint action with the Sheriff's Department, the Court recommends dismissal of Plaintiff's § 1983 claim against Wegmans with prejudice.

### B. Plaintiff's 42 U.S.C. § 1983 Claim Against Onondaga County

#### 1. Failure to State a Claim

Plaintiff has alleged a § 1983 claim against Onondaga County based on the negligence of the Sheriff's Department and false arrest in violation of his Fourth Amendment rights. (*See generally* Dkt. No. 1.) As noted above, because the Sheriff's Department is not suable, the Court is treating the County of Onondaga as Defendant for purposes of this initial review.

Pursuant to the standard for establishing municipality liability laid out in *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658 (1978), in order to set forth a cognizable claim for municipal liability under § 1983 against the County of Onondaga, Plaintiff must plead and prove that a deprivation of his constitutional rights "was caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012) (citing *Monell,* 436 U.S. 658); *see also Vippolis v. Village of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985) ("The plaintiff must first prove the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries beyond merely employing the misbehaving officer.") A municipality may be liable for deprivation of constitutional rights under § 1983 for policies or customs resulting in inadequate training, supervision, or hiring when the failure to train, supervise, or hire amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 388-89 (1989). To establish causation, there must "at the very least be an affirmative link between the policy and the particular constitutional violation alleged." *Oklahoma v. Tuttle*, 471 U.S. 808, 823 (1985).

Plaintiff has failed to identify or allege any facts showing the existence of a municipal policy or custom of Onondaga County or the Sheriff's Department which caused his allegedly false arrest, and Plaintiff has not alleged facts plausibly showing that Onondaga County or the Sheriff's Department failed to properly hire, supervise, and train subordinates in connection with his claims. *See Twombly*, 550 U.S. at 570; *Hall v. Smith*, 170 Fed.Appx. 105, 108 (11th Cir. 2006) (affirming dismissal of § 1983 claim against a municipality where plaintiff alleged no factual support for his conclusory statement that the municipality had a policy or custom of grossly inadequate supervision and training of its employees.) Therefore, the Court recommends that Plaintiff's § 1983 claims be dismissed as against Defendant County of Onondaga.

#### 2. Futility of Amendment

**\*5** Ordinarily the Court would be inclined to recommend dismissal of Plaintiff's § 1983 claim against Onondaga County with leave to amend in light of his *pro se* status. However, because as discussed below, it finds amendment would be futile in this case, the Court recommends dismissal with prejudice.

2018 WL 2108284

Plaintiff alleges the Sheriff's Department negligently handled a series of harassment complaints made against him by Wegmans. (Dkt. No. 1 at 2-4.) Because negligence is not actionable under § 1983, allowing Plaintiff amend his *Monell* claim with regard to negligence would be futile. *See Daniel v. Williams*, 474 U.S. 327, 330-32 (1986) ("Where a government official's act causing injury to his life, liberty, or property is merely negligent, no procedure for compensation is *constitutionally* required.") (emphasis in original).

Plaintiff also alleges false arrest. *Id.* The elements of a § 1983 claim for false arrest in violation of the Fourth Amendment, which are essentially the same as a state law claim for false arrest, are "(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Weyant v. Okst*, 101 F.3d 845, 853 (2d Cir. 1996) (internal citation and quotations marks omitted).

Here, Plaintiff has not alleged facts plausibly showing a § 1983 claim for false arrest. Plaintiff has alleged only that he was arrested (Dkt. No. 1 at 2, 3). Plaintiff has not alleged any facts plausibly showing that he was at any point confined in connection with the arrest. Even if he had, the documents Plaintiff has chosen to attach to his complaint establish probable cause for his arrest, thereby defeating his false arrest claim.

On initial review under 28 U.S.C. § 1915(e)(2)(B), the Court may consider facts set forth in exhibits attached as a part of the complaint as well as in the complaint itself. *Arya v. Ensil Technical Services, Inc.*, No. 12-CV-925S, 2012 WL 6690326, at \*1 n.1 (W.D.N.Y. Dec. 19, 2012) (citing *Chance v. Armstrong*, 143 F.3d 698, 700 n.1 (2d Cir. 1998) ). Where documents annexed to the complaint "contradict the allegations in a complaint, the court need not accept those conclusory assertions as true." *Batson v. RIM San Antonio Acquisition, LLC*, No. 15-cv-07576 (ALC), 2018 WL 1581675, at \*5 (S.D.N.Y. Mar. 27, 2018); *see also Gwaltney v. Lithford*, No. 1:16CV426, 2016 WL 3255026, at \*2 n.1 (M.D. N.C. June 13, 2016) (documents attached to the complaint that seemingly contradicted assertions in the complaint rendered the action frivolous and subject to dismissal on initial review); *Gilmore v. Downey*, No. No: 13-2239-JMB-DGB, 2013 WL 6489971, at \*2 (C.D. Ill. Dec. 10, 2013) (acknowledging on initial review under 28 U.S.C. § 1915(e)(2)(B) that a *pro se* plaintiff may plead himself out of court and that when documents attached to the complaint contradict the conclusory allegations in the complaint the documents trump the allegations).

A district court must dismiss an *in forma pauperis* action if the action is "based on an indisputably meritless legal theory." *Livingston*, 141 F.3d at 437 (quoting *Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam) (internal citation and quotation marks omitted) ). A claim is based on an "indisputably meritless legal theory" when "a dispositive defense clearly exists on the face of the complaint." *Id.* The Second Circuit has established that "[t]he existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or under § 1983. *Jenkins v. City of New York*, 478 F.3d 76, 84 (2d Cir. 2007) (quoting *Weyant*, 101 F.3d at 852).

 **\*6** In general, probable cause is established where "[t]he [arresting] officer has 'knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested.' " *Finigan v. Marshall*, 574 F.3d 57, 61-62 (2d Cir. 2009) (quoting *Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007) ). "The validity of an arrest does not depend upon an ultimate finding of guilt or innocence." *Peterson v. County of Nassau*, 995 F. Supp. 305, 313 (E.D.N.Y. 1998) (citing *Pierson v. Ray*, 386 U.S. 547, 555 (1967) ). "The court looks only to the information the arresting officer had at the time of the arrest." *Id.*; *see also Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) ("When determining whether probable cause exists courts must consider those facts *available to the officer* at the time of the arrest and immediately before it.") (emphasis in original) (quoting *Caldarola v. Calabrese*, 298 F.3d 156, 162 (2d Cir. 2002) ). "Once an officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." *Ricciuti v. N.Y.C. Trans. Auth.*, 124 F.3d 123, 128 (2d Cir. 1997).

The documents attached to the complaint by Plaintiff include the affidavits of Wille, the assistant asset protection manager of the Cicero Wegmans, and Maureen Hall, an employee in the pharmacy department in the Cicero Wegmans, both of whom state under penalty of perjury that Plaintiff had made numerous harassing and threatening calls to Wegmans during September

Case 6:25-cv-01298-AJB-ML    Document 5    Filed 04/23/26    Page 57 of 75

2018 WL 2108284

2017, despite having been told not to call. (Dkt. No. 1 at 7, 8.) According to Wille, Plaintiff called the Cicero Wegmans over 100 times during an approximately three hour period the morning of September 15, 2017, after Deputy Redshaw had called Plaintiff the night before in response to a complaint from Wegmans and told him to stop calling. *Id.* A misdemeanor information was completed by Deputy VanDyke on September 15, 2017, after being advised of the calls by Wille. *Id.* at 14. A temporary order of protection requiring Plaintiff to stay away from Wille and his place of business was issued by the Cicero Court the same day. *Id.* at 13.

In his complaint, Plaintiff has not denied making the phone calls to Wegmans or making the statements attributed to him. (*See* Dkt. No. 1.) Rather, Plaintiff claims Wegmans and the Sheriff's Department were negligent in the handling of his complaints over customer service. *Id.* at 3. The Court finds that the information given the Sheriff's Department by Wille and Hall regarding Plaintiff's harassing and threatening phone calls prior to the issuance of the misdemeanor information was "sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested." *Finigan,* 574 F.3d at 368; *see also Singer v. Fulton County Sheriff,* 63 F.3d 110, 119 (2d Cir. 1995) ("An arresting officer advised of a crime by a person who claims to be the victim, and who has signed a complaint or information charging someone with the crime, has probable cause to effect an arrest absent circumstances that raise doubts as to the victim's veracity."). That finding, along with Plaintiff's non-denial of the calls to the Cicero Wegmans, provide sufficient grounds for the Court to conclude that documents attached to Plaintiff's complaint, on their face, show probable cause for his arrest, and that his false arrest claim is "based on an indisputably meritless legal theory," rendering amendment of the claim futile. *Livingston,* 141 F.3d at 437.

### C. State Law Negligence and False Arrest Claims

Inasmuch as the Court is recommending that Plaintiff's federal claims against the Defendants be dismissed without leave to amend, it also recommends that the District Court decline to exercise supplemental jurisdiction over Plaintiff's state law negligence and false arrest claims, without prejudice and subject to refiling in state court and to reconsideration in the event the District Court does not accept this Court's recommendation for dismissal of Plaintiff's § 1983 claims without leave to amend. *See Kolari v. New York Presbyterian Hosp.*, 455 F.3d 118, 120 (2d Cir. 2006).

### D. Motion for Appointment of Counsel

**\*7** Plaintiff has moved for appointment of counsel. (Dkt. No. 3.) Even if the Court were not recommending dismissal of his complaint without leave to amend, a more fully developed record would be necessary before an assessment can be made as to whether counsel should be appointed. *See Hendricks v. Coughlin*, 114 F.3d 390, 392 (2d Cir. 1997) (court must look to the likelihood of merit of the underlying dispute in determining whether to appoint counsel). Therefore, the motion is denied.

The denial is without prejudice so that Plaintiff will not be precluded from making a subsequent motion for appointment of counsel in the event the District Court allows the action to proceed, and Plaintiff demonstrates that he has been unable to obtain counsel through the private sector or public interest firms. *See Cooper v. A. Sargenti Co., Inc.*, 877 F.2d 170, 173-74 (2d Cir. 1989) (citing *Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986) ).

**WHEREFORE**, it is hereby

**ORDERED** that Plaintiff's IFP Application (Dkt. No. 2) is **GRANTED**; and it is

**RECOMMENDED** that Plaintiff's complaint (Dkt. No. 1) be **DISMISSED IN ITS ENTIRETY** on initial review pursuant to 28 U.S.C. § 1915(3)(2)(B); and it is further

**RECOMMENDED** that dismissal of Plaintiff's § 1983 claims be **WITH PREJUDICE AND WITHOUT LEAVE TO AMEND**; and it is further

Garvey v. Wegmans, Not Reported in Fed. Supp. (2018)

2018 WL 2108284

Case 6:25-cv-01298-AJB-ML    Document 5    Filed 04/23/26    Page 58 of 75

**RECOMMENDED** that the Court decline to exercise supplemental jurisdiction over Plaintiff's state law negligence and false arrest claims; and it is hereby

**ORDERED** that Plaintiff's motion for appointment of counsel (Dkt. No. 3) be **DENIED WITHOUT PREJUDICE**; and it is further

**ORDERED** that the Clerk serve a copy of this Order and Report-Recommendation and copies of the unpublished decisions cited herein on Plaintiff in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[5] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989) ); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a).

**All Citations**

Not Reported in Fed. Supp., 2018 WL 2108284

---

## Footnotes

1    Plaintiff has sued the Onondaga County Sheriff's Department which, under New York law, is an administrative arm of Onondaga County, has no independent legal identity, and may not sue or be sued. *See Jenkins v. Onondaga County Sheriff's Department*, No. 5:12-CV-855 (GTS/ATB), 2012 WL 4491134, at *2 (N.D.N.Y. June 28, 2012). Because Plaintiff is proceeding *pro se*, the Court will construe his claims as being brought against the County of Onondaga for purposes of initial review.

2    Page references to documents identified by docket number are to the numbers assigned by the CM/ECF docketing system maintained by the Clerk's Office.

3    Penal Law § 240.30(2), a class A misdemeanor, provides that "A person is guilty of aggravated harassment in the second degree when ... [w]ith intent to harass or threaten another person, he or she makes a telephone call, whether or not a conversation ensues, with no purpose of legitimate communication."

4    Copies of unpublished decisions will be provided to Plaintiff in accordance with *LeBron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

4    *See Gonzales v. National Westminster Bank PLC*, 847 F. Supp. 2d 567, 569 n.2 (S.D.N.Y. 2012) ("Courts may take judicial notice of publicly available information including newspaper articles and other public disclosures.").

5    If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C). [Editor's Note: Appended decisions have been deleted for online purposes.]

---

**End of Document**                                     © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2018 WL 2108188

2018 WL 2108188
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Shaun P. GARVEY, Plaintiff,

v.

WEGMANS, Onondaga County Sheriff's Department, Defendants.

5:18-CV-00255 (TJM/TWD)
|
Signed 05/04/2018

**Attorneys and Law Firms**

Shaun Garvey, Liverpool, NY, pro se.

**DECISION and ORDER**

THOMAS J. McAVOY, Senior United States District Judge

**I. INTRODUCTION**

 **\*1** This *pro se* action was referred to the Hon. Thérèse Wiley Dancks, United States Magistrate Judge, for initial review pursuant to 28 U.S.C. §§ 1915(e) and 1915A. No objections to Magistrate Judge Dancks' Order and Report-Recommendation [dkt. # 5] have been filed, and the time to do so has expired.

**II. DISCUSSION**

After examining the record, this Court has determined that the recommendations in the Order and Report-Recommendation are not subject to attack for plain error or manifest injustice.

**III. CONCLUSION**

Accordingly, the Court **ADOPTS** the recommendations in the Order and Report-Recommendation [dkt. # 5] for the reasons stated therein. Therefore, it is hereby

**ORDERED** that Plaintiff's complaint (dkt. # 1) is **DISMISSED** on initial review under 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A; and it is further

**ORDERED** that dismissal of Plaintiff's § 1983 claims is **WITH PREJUDICE AND WITHOUT LEAVE TO AMEND**; and it is further

**ORDERED** that dismissal of Plaintiff's state law negligence and false arrest claims is **WITHOUT PREJUDICE** to refiling in state court because the Court declines to exercise supplemental jurisdiction over these claims.

**IT IS SO ORDERED**.

Garvey v. Wegmans, Not Reported in Fed. Supp. (2018)

2018 WL 2108188

**All Citations**

Not Reported in Fed. Supp., 2018 WL 2108188

---

**End of Document**
© 2026 Thomson Reuters. No claim to original U.S. Government Works.

1997 WL 599355

1997 WL 599355
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Kenneth BROWN, Plaintiff,

v.

Andrew PETERS, Warden, Watertown Correctional Facility; Joseph Williams, Warden, Lincoln Work–Release Center;
Francis J. Herman, Senior Parole Officer Interstate Bureau; T. Stanford, Senior Parole Officer; Deborah Stewart, Parole
Officer; John Doe # 1, Parole Agent, Watertown Correctional Facility; John Doe # 2, Parole Agent, Lincoln Work
Release Center; Susan Bishop, Director of Interstate Compact, South Carolina; Cecil Magee, Parole Officer, South
Carolina; Frank Barton, Parole Officer, South Carolina; John McMahan, Parole Officer, South Carolina, Defendants.

No. Civ.A. 95CV1641RSPDS.
|
Sept. 22, 1997.

**Attorneys and Law Firms**

Kenneth Brown, State Court Institute–Greene, Waynesburg, PA, plaintiff, pro se.

Dennis C. Vacco, New York State Attorney General, The Capitol Albany, NY, for defendants Peters, Herman Stewart, Doe
# 1, Doe # 2, and Williams, Jeffrey M. Dvorin, Assistant Attorney General, Carl N. Lundberg, Chief Legal Counsel, South
Carolina Department of Probation, Columbia, SC, for defendants Bishop, Magee, Barton, McMahan, and Stanford, Carl N.
Lundberg, of Counsel.

DECISION AND ORDER

POOLER, J.

**\*1** The above matter comes to me following a Report–Recommendation by Magistrate Judge Daniel Scanlon, Jr., duly filed
on April 17, 1997. Following ten days from the service thereof, the Clerk has sent me the entire file, including any and all
objections filed by the parties herein.

Plaintiff Kenneth Brown commenced this Section 1983 civil rights action on November 17, 1995. On February 12, 1996,
Magistrate Judge Scanlon ordered Brown to submit an amended complaint alleging the specific acts committed by the
individuals named as defendants which Brown claimed violated his constitutional rights. Brown filed an amended complaint on
March 21, 1996. In his amended complaint, Brown alleged that defendants violated his rights under the Eighth and Fourteenth
Amendments by failing to process properly his interstate compact paperwork, resulting in Brown being imprisoned pursuant
to a parole hold when in fact he had never violated the conditions of his parole. For a more complete statement of Brown's
claims, see his amended complaint. Dkt. No. 5.

On August 5, 1996, defendants Peters and Williams made a motion to dismiss for failure to state a claim pursuant to Fed.R.Civ.P.
12(b)(6). Dkt. No. 13; Dkt. No. 14, at 2. On August 19, 1996, defendants Bishop, Magee, Barton, and McMahan made a motion
to dismiss the complaint against them or, in the alternative, for summary judgment. Dkt. No. 20. On October 17, 1996, defendants
Herman, Stewart, and Stanford made a motion to dismiss for failure to state a claim. Dkt. No 34. On April 17, 1996, Magistrate
Judge Scanlon recommended that all defendants' motions to dismiss be granted and that the complaint be dismissed. Dkt. No. 50.

Brown v. Peters, Not Reported in F.Supp. (1997)
1997 WL 599355

On June 9, 1997, Brown filed objections to the magistrate judge's report-recommendation, having been granted additional time in which to do so. Dkt. No. 52. In addition, Brown filed on June 9, 1997, a motion for leave to file a second amended complaint and a copy of his proposed amended complaint. Dkt. No. 53. I turn first to the last motion filed, Brown's motion for leave to amend his complaint a second time.

Brown seeks to file a second amended complaint "setting forth in detail the personal involvement of each defendant and how their acts of commission and omission served to deprive plaintiff of Constitutionally secured rights." Dkt. No. 53. The district court has discretion whether to grant leave to amend. *Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir.1993). In exercising that discretion, the court should freely grant leave to amend when justice so requires. Fed.R.Civ.P. 15(a). However, the court need not grant leave to amend where it appears that amendment would prove to be unproductive or futile. *Ruffolo,* 987 F.2d at 131.

Here, Brown moved to amend his complaint to add additional allegations against the named defendants. However, the additional allegations fail to cure the deficiency which forms the basis of defendants' motion to dismiss—the absence of defendants' personal involvement in a constitutional deprivation. Section 1983 imposes liability upon an individual only when personal involvement of that individual subjects a person to deprivation of a federal right. *See Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A complaint is fatally defective if it fails to allege personal involvement sufficient to establish that a supervisor was "directly and personally responsible for the purported unlawful conduct." *Alfaro Motors, Inc. v. Ward,* 814 F.2d 883, 886 (2d Cir.1987).

**\*2** Brown's proposed amended complaint alleges in conclusory fashion that defendants acted "in a grossly negligent and concerted manner which breached their duties owed to Plaintiff and is the proximate cause of [the violation of plaintiff's constitutional rights]." Proposed Am. Compl., at 3. Brown continues in the same vein, stating that defendants owed duties to plaintiff to carry out their jobs in a professional manner and they failed to carry out those duties appropriately. The complaint states that defendants held specific responsibilities, such as checking for outstanding warrants, which if performed properly should have alerted them to a problem. However, nowhere does the complaint set forth allegations that these defendants either participated directly in any constitutional infraction or that they were even aware of such an infraction. The proposed amended complaint merely alleges that these defendants failed in performing their supervisory and ministerial functions. "These bare assertions do not state a claim under 42 U.S.C. § 1983." *Smiley v. Davis,* 1988 WL 78306, \*2 (S.D.N.Y.).

This plaintiff previously has had the opportunity to amend his complaint for the same reason asserted here, to allege personal involvement on the part of defendants. Brown's first amended complaint failed to accomplish that task, and it appears that even if allowed to amend again Brown would be unable to make the requisite allegations with sufficient specificity to sustain his complaint. Consequently, I find that amendment would be futile, and I deny Brown's motion for leave to amend his complaint.

I turn now to the magistrate judge's report-recommendation and defendants' motions. The magistrate judge recommends that I grant defendants' motions and dismiss the complaint as to all defendants. The report-recommendation clearly describes the grounds on which the magistrate judge recommends dismissal as to each defendant. Fed.R.Civ.P. 72(b) requires the district judge to make a *de novo* determination on "any portion of the magistrate's disposition to which specific, written objection has been made." Brown's objections fail to address directly any of the analysis. Brown's objections state (1) that he has been deprived of his constitutional rights; (2) that he has stated a cause of action; (3) that the court wrongly refused to appoint an attorney for him and wrongly stayed discovery pending the outcome of these motions; (4) that he seeks to file an amended complaint; (5) the standard of review for a Fed.R.Civ.P. 12(b)(6) motion; (6) that he disagrees with the magistrate judge's recommendation to grant defendants' motions because the allegations in his complaint, which he repeats, show that his rights were violated; and (7) the text of the Fourteenth and Eighth Amendments.

Even affording the objections the liberal reading required for *pro se* pleadings, I find that these objections fail to state any basis whatsoever, much less a specific one, for the court not to adopt the magistrate judge's rulings. They simply re-state the relief sought and the facts on which Brown grounds his complaint and conclude that the magistrate judge's conclusions are

1997 WL 599355

wrong. When the parties make only frivolous, conclusive, or general objections, the court reviews the report-recommendation for clear error. *See Camardo v. General Motors Hourly–Rate Employees Pension Plan,* 806 F.Supp. 380, 382 (W.D.N.Y.1992) (court need not consider objections which are frivolous, conclusive, or general and constitute a rehashing of the same arguments and positions taken in original pleadings); *Chambrier v. Leonardo,* 1991 WL 44838, *1 (S.D.N.Y.) (restatement of allegations already before the court and assertion that valid constitutional claim exists insufficient to form specific objections); *Schoolfield v. Dep't of Correction,* 1994 WL 119740, *2 (S.D.N.Y.) (objections stating that magistrate judge's decisions are wrong and unjust, and restating relief sought and facts upon which complaint grounded, are conclusory and do not form specific basis for not adopting report-recommendation); *Vargas v. Keane,* 1994 WL 693885, *1 (S.D.N.Y.) (general objection that report does not address violation of petitioner's constitutional rights is a general plea that report not be adopted and cannot be treated as objection within the meaning of 28 U.S.C. § 636), *aff'd,* 86 F.3d 1273 (2d Cir.), *cert. denied,* 519 U.S. 895, 117 S.Ct. 240, 136 L.Ed.2d 169 (U.S.1996). *See also Scipio v. Keane,* 1997 WL 375601, *1 (1997) (when objections fail to address analysis directly, court reviews report-recommendation for clear error); Fed.R.Civ.P. 72(b), Advisory Comm. Note (when no specific, written objections filed, "court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation").

**\*3** Because Brown fails to make specific objections or provide any basis for his general objections, I review the report-recommendation for clear error. After careful review, I conclude that the magistrate judge's report-recommendation is well-reasoned and is not clearly erroneous. [1] The magistrate judge employed the proper standard, accurately recited the facts, and reasonably applied the law to those facts. Consequently, I adopt the report-recommendation.

CONCLUSION

Because plaintiff's proposed amendment demonstrates that amendment would be futile, I deny plaintiff's motion for leave to amend his complaint. I approve the magistrate judge's recommendation and grant defendants' motions to dismiss. Plaintiff's complaint is dismissed in its entirety.

IT IS SO ORDERED.

**ORDER and REPORT–RECOMMENDATION**

This matter was referred to the undersigned for report and recommendation by the Hon. Rosemary S. Pooler, United States District Judge, by Standing Order dated November 12, 1986. Currently before this Court are a number of motions. Defendants Peters and Williams have filed a motion to dismiss (dkt.13); defendants Bishop, Magee, Barton and McMahan have filed a motion for summary judgment, or in the alternative to dismiss (dkt.20); and defendants Herman, Stewart and Stanford also have filed a motion to dismiss (dkt.34). Plaintiff opposes these three motions (dkts.27, 29, 33, 38). Defendants Bishop, Magee and McMahan have filed a motion to stay discovery (dkt.41) and plaintiff has filed a motion to extend time (dkt.44) in which to file opposition to the latter motion for a stay of discovery.

The Court addresses these issues *seriatim.*

BACKGROUND

Plaintiff's amended complaint, which he has brought pursuant to 42 U.S.C. § 1983, alleges the following facts. In October, 1991, plaintiff was incarcerated in the Watertown Correctional Facility in Watertown, New York. He applied for an interstate compact because he wanted to return to South Carolina to live with his common law wife, Pamela Reid. During the application process,

1997 WL 599355

he was interviewed by the facility's parole officer, identified only as defendant John Doe # 1. After signing the necessary papers, his application was forwarded to defendant Andrew Peters, the facility's superintendent, who reviewed, signed and forwarded the papers to the Interstate Bureau. Amend. Compl. at ¶¶ 1–2; Exs. A, B.

On or about January 15, 1992, while his compact was waiting for review at the Interstate Bureau, plaintiff was approved for work release and sent to the Lincoln Work Release Center in New York City. While at the center, plaintiff spoke to a parole officer, defendant John Doe # 2, and told him that he was seeking a compact that would return him to South Carolina upon his conditional release. Plaintiff claims the parole officer told him that he would handle the necessary paperwork, although the officer had had no experience with an interstate compact. Amend. Compl. at ¶¶ 3, 4.

*4 Plaintiff, meanwhile, asked Reid whether any officials had contacted her in South Carolina regarding his prospective residence in that state. Upon discovering no one had contacted her, plaintiff asked a lawyer he knew, Navron Ponds, to inquire as to his compact status. In March, 1992, the lawyer spoke with defendant Susan Bishop, who is the director of the interstate compact program in South Carolina. Bishop allegedly told Ponds that plaintiff "was disapproved because there was a discrepancy about approving plaintiff['s] compact." The "discrepancy" was the fact that plaintiff owed the state of South Carolina eighty-six days of confinement from a previous sentence. Plaintiff claims Bishop told Ponds to contact defendants Cecil Magee and Frank Barton, who worked for the South Carolina Parole Department. Sometime in March, 1992, Ponds made some calls to Barton and Magee. A verbal agreement was reached, and plaintiff, upon speaking with Barton and Magee was told that his compact had been approved. He also was told that he should report to the South Carolina Department of Parole upon being released. Amend. Compl. at ¶¶ 5–7.

Prior to leaving the Lincoln Work Release Center, plaintiff processed paperwork related to his interstate compact. His paperwork was sent by Doe # 2 to defendant Joseph Williams, the superintendent of the center. Williams reviewed, signed and returned the paperwork to plaintiff. On May 1, 1992, upon his release from the center, plaintiff traveled to South Carolina. Three days later, he entered a South Carolina parole office and promptly was arrested because of the eighty-six days of confinement that he owed the state. Plaintiff's paperwork was given to defendant John McMahan, a parole officer. Plaintiff claims that McMahan never returned this paperwork to him. On May 20, 1992, the state of South Carolina revoked plaintiff's parole and plaintiff was returned to prison to serve the eighty-six days that he owed. When he asked McMahan what would happen to his one year of parole from New York, the officer allegedly told him that his New York parole would run concurrently with his South Carolina parole, and that when he finished his South Carolina parole, he would not owe any parole whatsoever. Plaintiff served the eighty-six days he owed and was released on July 31, 1992. Amend. Compl. at ¶¶ 8–10.

In February, 1993, plaintiff was arrested on robbery charges in South Carolina. The charges ultimately were dropped, but he apparently encountered some difficulties regarding this arrest as a result of a parole hold that New York state had placed upon him. Bishop's office told him that it had nothing to do with his parole hold and that any problem that he had was between him and the state of New York. He talked to authorities in Albany, New York regarding the parole hold, but was not successful in his efforts to have the hold removed. On September 30, 1993, after had been extradited to New York as a fugitive from justice, plaintiff was given a preliminary hearing at Riker's Island, New York. The hearing officer found no probable cause that plaintiff had violated any condition of parole. He was released. Amend. Compl. at ¶¶ 11–14; Exs. C–J.

*5 Plaintiff claims that he would not have suffered hardships if his interstate compact had been handled correctly. He alleges that defendant Deborah Stewart failed to follow up and see whether plaintiff had arrived in South Carolina. If she had, he argues, she would have discovered that he had been arrested upon his arrival. He alleges that defendant Francis Herman, a parole officer at the Interstate Bureau failed to do his job by not investigating plaintiff's violation reports. Amend. Compl. at ¶¶ 15–17; Exs. F–I.

Plaintiff asserts that the foregoing amounts violations of his Eighth and Fourteenth Amendment rights, wherefore he both compensatory and declaratory relief.

1997 WL 599355

## DISCUSSION

A. Motion to Dismiss by Williams and Peters.

Williams and Peters have filed a motion to dismiss plaintiff's complaint pursuant to FED.R.CIV.P. 12(b)(6) on the grounds that it fails to state a claim upon which relief may be granted. In a Rule 12(b)(6) motion, all factual allegations in the complaint must be taken and construed in plaintiff's favor. *See LaBounty v. Adler,* 933 F.2d 121, 122 (2d Cir.1991) (citing *Ortiz v. Cornette,* 867 F.2d 146, 149 (1989)). The Court's role is not to assess whether plaintiffs have raised questions of fact or demonstrated an entitlement to a judgment as a matter of law, as in a motion made pursuant to FED.R.CIV.P. 56 for summary judgment, but rather to determine whether plaintiff's complaint sufficiently alleges all of the necessary legal elements to state a claim under the law. *See Christopher v. Laidlaw Transit, Inc.* 899 F.Supp. 1224, 1226 (S.D.N.Y.1995), (citing *Ricciuti v. New York City Transit Authority,* 941 F.2d 119, 124 (2d Cir.1991)). Factual allegations in brief or memoranda may not be considered. *Fonte v. Board of Managers of Continental Towers Condominium,* 848 F.2d 24, 25 (2d Cir.1988). The Court now turns to the issues presented.

Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994). As superintendents at New York State Correctional facilities, Williams and Peter may be found personally involved in the alleged deprivation of plaintiff's constitutionally protected rights by a showing that they: (1) directly participated in the infraction; (2) knew of the infraction, but failed to remedy the wrong; (3) created or continued a policy or custom under which unconstitutional practices occurred; or (4) were grossly negligent in managing subordinates who caused unlawful conditions or events. *Id.,* (quoting *Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986)). Supervisory liability also may be imposed against Williams or Peters with a showing of gross negligence or deliberate indifference to plaintiff's constitutional rights. *Id.* Absent some personal involvement by Williams or Peters in the allegedly constitutionally infirm conduct of their subordinates, neither can be held liable under § 1983. *Gill v. Mooney,* 824 F.2d 192, 196 (2d Cir.1987).

**\*6** Plaintiff has not provided any evidence linking either Williams or Peters to his alleged constitutional deprivations. All that plaintiff has alleged is that Williams and Peters, as superintendents, have reviewed and signed paperwork relating to plaintiff's compact. Though it has long been held that *pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers" for the purpose of a motion to dismiss under Rule 12(b)(6), *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972), plaintiff has not explained how the ministerial conduct of these two defendants was violative of the Constitution. Their motion to dimiss should be granted.

B. Motion for Summary Judgment or to Dismiss by Bishop, Magee, Barton and McMahan.

Bishop, Magee, Barton and McMahan have filed a motion for summary judgment, or in the alternative a motion to dismiss. The Court will treat their motion as a motion to dismiss. "[C]omplaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." *Barr v. Adams,* 810 F.2d 358, 363 (2d Cir.1987). Plaintiff has not alleged specifically how the conduct of these four defendants infringed upon his constitutional rights. In his amended complaint, he contends that defendants violated the Constitution by "continuously breaching [[[their] duty" to him. This language underscores the defect with the complaint: if it alleges anything at all, it alleges that defendants were negligent in handling plaintiff's interstate compact and parole. To state a cognizable § 1983 claim, the prisoner must allege actions or omissions sufficient to demonstrate deliberate indifference; mere negligence will not suffice. *Hayes v. New York City Dept. of Corrections,* 84 F.3d 614, 620 (2d Cir.1996); *Morales v. New York State Dep't of Corrections,* 842 F.2d 27, 30 (2d Cir.1988) (section 1983 does not encompass a cause of action sounding in negligence).

The Court finds that the claims against Bishop, Magee, Barton and McMahan should be dismissed.

C. Motion to Dismiss by Herman, Stewart and Stanford.

1997 WL 599355

Plaintiff's claim against Stewart is that she failed to follow up and see whether plaintiff had arrived in South Carolina. Herman, he likewise asserts, failed to do his job because he did not investigate plaintiff's violation reports. Plaintiff has not alleged how these actions run afoul of the Constitution; and again, these claims seem to be grounded in negligence, which is not actionable under § 1983. *Hayes,* 84 F.3d at 620.

Plaintiff's claim against Stanford must fail because his complaint literally fails to state a claim against that defendant. Aside from naming Stanford as a defendant, and alleging that he was the appointed Senior Parole Officer at plaintiff's September 30, 1993 revocation hearing at Riker's Island, plaintiff does not detail how Stanford violated his constitutional rights. Absent some personal involvement by Stanford in the allegedly constitutionally infirm conduct of his subordinates, he cannot be held liable under § 1983. *Gill,* 824 F.2d at 196.

 **\*7**  Accordingly, the Court finds that Stanford, Stewart and Herman's motion to dismiss should be granted.

D. Plaintiff's "John Doe" Claims.

In so far as neither John Doe # 1 nor John Doe # 2 have been identified and served in this matter, the Court does not have jurisdiction over these parties and does not reach the merits of plaintiff's claims against them.

E. Discovery Motions.

Defendants Bishop, Magee and McMahan have filed a motion to stay discovery until the Court has made a ruling on their motion to dismiss. Plaintiff has filed a motion to extend the time in which he may file opposition to defendants' motion. Plaintiff, however, has filed his opposing response (dkt.47), therefore his instant discovery motion is denied as moot. In that the Court recommends granting defendants' motion to dismiss, discovery in this matter would be fruitless. Accordingly, defendants' motion for a stay of discovery pending the resolution of their motion to dismiss is granted.

**CONCLUSION**

WHEREFORE, based upon the foregoing analysis, it is hereby

ORDERED, that plaintiff's motion to extend the time to file an opposing reply (dkt.44) is denied as moot; and it is further

ORDERED, that defendants Bishop, Magee and McMahan's motion to stay discovery until their motion to dismiss is decided (dkt.41) is granted; and it is further

RECOMMENDED, that defendants Peters and Williams' motion to dismiss (dkt.13) be granted; and it is further

RECOMMENDED, that defendants Bishop, Magee, Barton and McMahan's motion to dismiss (dkt.20) be granted; and it is further

RECOMMENDED, that defendants Herman, Stewart and Stanford's motion to dismiss (dkt.34) be granted.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. ***FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.*** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 6(a), 6(e) and 72.

**Brown v. Peters, Not Reported in F.Supp. (1997)**

Case 6:25-cv-01298-AJB-ML   Document 5   Filed 04/23/26   Page 67 of 75

1997 WL 599355

**All Citations**

Not Reported in F.Supp., 1997 WL 599355

---

**Footnotes**

1       I note, however, that the report-recommendation would survive even *de novo* review.

---

                                    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW   © 2026 Thomson Reuters. No claim to original U.S. Government Works.      7

2019 WL 3361246

2019 WL 3361246
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Brittany KILCHER, Plaintiff,

v.

NEW YORK STATE POLICE, Defendant.

1:19-CV-00157 (MAD/TWD)

|

Signed 02/19/2019

**Attorneys and Law Firms**

BRITTANY KILCHER, Plaintiff pro se, 1618 Columbia Turnpike, Castleton-on-Hudson, New York 12033.

**ORDER AND REPORT-RECOMMENDATION**

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

**\*1** The Clerk has sent the *pro se* civil rights complaint of Plaintiff Brittany Kilcher, brought pursuant to 42 U.S.C. § 1983, for initial review. (Dkt. No. 1.) Plaintiff has alleged § 1983 claims against Defendant New York State Police for violation of her rights under the First, Fourth, and Fifth Amendments, as well as a state court negligence claim. *Id.* Also before the Court is Plaintiff's application to proceed *in forma pauperis* ("IFP application"). (Dkt. No. 2.)

**I. IFP APPLICATION**
A court may grant *in forma pauperis* status if a party "is unable to pay" the standard fee for commencing an action. 28 U.S.C. § 1915(a)(1). After reviewing Plaintiff's IFP application, the Court finds that she meets this standard. Therefore, Plaintiff's IFP application (Dkt. No. 2) is granted.

**II. LEGAL STANDARDS FOR INITIAL REVIEW**
Even when a plaintiff meets the financial criteria for *in forma pauperis*, 28 U.S.C. § 1915(e) directs that when a plaintiff proceeds *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that ... the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must look to see whether the complaint lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). "An action is frivolous when either: (1) the factual contentions are clearly baseless such as when the claims are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory." *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) (citations and internal quotation marks omitted). Although extreme caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to respond, *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983), the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *See, e.g., Thomas v. Scully*, 943 F.2d 259, 260 (2d Cir. 1991) (per curiam) (holding that a district court has the power to dismiss a complaint *sua sponte* if the complaint is frivolous).

To survive dismissal for failure to state a claim, a complaint must plead enough facts to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While Rule 8(a) of the Federal Rules of Civil Procedure, which sets forth the general rules of pleading, "does not require detailed factual allegations, ... it demands more than an unadorned, the-defendant-harmed-me accusation." *Id.* In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

**\*2** Where a plaintiff proceeds *pro se*, the pleadings must be read liberally and construed to raise the strongest arguments they suggest. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (citation omitted). A *pro se* complaint should not be dismissed "without giving leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal quotation marks omitted). An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## III. COMPLAINT

Plaintiff alleges that on July 15, 2018, a vehicle in which she and her friends were riding was struck from the rear by another vehicle. (Dkt. No. 1 at 2.[1]) Plaintiff further alleges that a trooper came to the car in which Plaintiff was a passenger, yelled profanities, and told the driver to get out of the car. *Id.* Plaintiff began recording the incident, and the trooper told her to put her phone down. *Id.* The trooper then allegedly assaulted Plaintiff and placed her in handcuffs. *Id.* According to Plaintiff, the Defendant New York State Police has failed to arrest the trooper or otherwise hold her accountable since the time of the incident. *Id.*

Plaintiff alleges that the trooper used excessive force and unlawfully imprisoned Plaintiff in violation of her Fourth Amendment rights, causing Plaintiff to miss work, sustain excessive bruising, and suffer from post-traumatic stress, hyperventilation, and defamation of character. *Id.* at 3. Plaintiff further alleges that her Fifth Amendment right to due process of law was violated when she was aggressively yanked out of the car for exercising her right to record the incident and subsequently placed in handcuffs. *Id.* Plaintiff also alleges that as a victim in a car accident, the trooper addressed her with profanities and told her to put her phone down and assaulted her when she began to record the incident in violation of her First Amendment rights. *Id.* Plaintiff has also asserted a state law negligence claim based upon the trooper laughing at her when Plaintiff asked for medical attention. *Id.* Plaintiff seeks monetary damages and the arrest of the trooper. *Id.* at 4.

## IV. ANALYSIS

The sole named Defendant in this action is the New York State Police. (Dkt. No. 1.) Plaintiff's claims against the New York State Police are barred by both the Eleventh Amendment and the language of § 1983.[2] *See Pierce v. New York State Police (Troop D Lowville)*, No. 7:05-CV-1477 (GHL), 2011 WL 1315485, at \*13 (N.D.N.Y. April 4, 2011)[3] (citing *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989)).

The Eleventh Amendment jurisdictionally bars from federal court all suits by private parties against a state or one of its agencies unless the state consents to such suit or Congress has expressly abrogated the state's immunity. *See Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100-02 (1984). It is well-settled that Congress did not abrogate states' immunity when it enacted § 1983. *See, e.g., Quern v. Jordan*, 440 U.S. 332, 343-45 (1979). The Eleventh Amendment bar has been found to apply to the New York State Police as an agency of the State of New York. *See, e.g., Riley v. Cuomo,* No. 2:17-cv-01631 (ADS) (AYS), 2018 WL 1832929, at \*4 (E.D.N.Y. April 16, 2018) (New York State Police as a division in the executive department of

2019 WL 3361246

New York State is immune from claims under § 1983); *Finkelman v. New York State Police*, No. 06 Civ. 8705(JSR), 2007 WL 4145456, at *3 (S.D.N.Y. Nov. 15, 2007) (Eleventh Amendment barred plaintiff's suit against New York State Police seeking monetary damages under § 1983); *Estes-El v. Town of Indian Lake*, 954 F. Supp. 527, 536 (N.D.N.Y. 1997) (same). Moreover, the New York State Police is not a person subject to suit under § 1983. *See Lilly v. Cullen*, No. 15-CV-874A(F), 2017 WL 1273972, at *3 (W.D.N.Y. March 14, 2017) (citing *Will*, 491 U.S. at 65).

**\*3** In light of the foregoing, the Court recommends that Plaintiff be granted thirty days from the date the District Court files its order on this Court's Report-Recommendation within which to file an amended complaint, for initial review by this Court, naming a proper defendant or defendants not subject to the Eleventh Amendment bar as defendant(s) in this action. [4] The Court further recommends that upon the expiration of the thirty days granted Plaintiff to file an amended complaint, the action be dismissed against Defendant New York State Police for lack of subject matter jurisdiction under 28 U.S.C. § 1915(e)(B)(iii) and Rule 12(h)(3) of the Federal Rules of Civil Procedure, whether or not Plaintiff has filed an amended complaint.

**ACCORDINGLY**, it is hereby

**ORDERED** that Plaintiff's IFP application (Dkt. No. 2) is **GRANTED**; and it is hereby

**RECOMMENDED** that Plaintiff be granted thirty days from the date the District Court files its order on this Court's Report-Recommendation within which to file an amended complaint, for initial review by this Court, naming a proper defendant or defendants not subject to the Eleventh Amendment bar as defendant(s) in this action; and it is further

**RECOMMENDED** that upon the expiration of the thirty days granted Plaintiff to file an amended complaint, the original complaint (Dkt. No. 1) be dismissed against Defendant New York State Police under 28 U.S.C. § 1915(e)(B)(iii) and Rule 12(h)(3) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction, whether or not Plaintiff has filed an amended complaint; and it is hereby

**ORDERED** that the Clerk provide Plaintiff with a copy of this Order and Report-Recommendation, along with copies of all unpublished decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. [5] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

**All Citations**

Not Reported in Fed. Supp., 2019 WL 3361246

---

**Footnotes**

1        Page references to documents identified by docket number are to the numbers assigned by the CM/ECF docketing system maintained by the Clerk's Office.

2        The Eleventh Amendment also bars Plaintiff's state law negligence claim against the New York State Police. *See Pennhurst*, 465 U.S. at 120; *Winokur v. Office of Court Admin.*, 190 F. Supp. 2d 444, 450-51 (E.D.N.Y. 2002).

---

Case 6:25-cv-01298-AJB-ML    Document 5    Filed 04/23/26    Page 71 of 75

2019 WL 3361246

3      Copies of all unpublished decisions cited herein will be provided to Plaintiff in accordance with *LeBron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

4      A § 1983 claim for monetary damages properly brought against a state trooper in his or her individual capacity is not barred by the Eleventh Amendment. *See Estes-El*, 954 F. Supp. at 537. Individual capacity suits seek to impose individual liability upon a government officer who has caused the deprivation of a federal right while acting under color of state law. *Hafer v. Melo*, 502 U.S. 21, 25 (1991).

5      If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. 6(a)(1)(C).

---

**End of Document**                                      © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2019 WL 2511154
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Brittany KILCHER, Plaintiff,
v.
NEW YORK STATE POLICE, Defendant.

1:19-CV-00157 (MAD/TWD)
|
Signed 06/18/2019

**Attorneys and Law Firms**

BRITTANY KILCHER, 1618 Columbia Turnpike, Castleton-on-Hudson, New York 12033, Plaintiff pro se.

**MEMORANDUM-DECISION AND ORDER**

Mae A. D'Agostino, U.S. District Judge

## I. INTRODUCTION

**\*1** On February 7, 2019, *pro se* plaintiff Brittany Kilcher ("Plaintiff") commenced this action against Defendant New York State Police ("Defendant"), pursuant to 42 U.S.C. § 1983, alleging that Defendant violated Plaintiff's rights under the First, Fourth, and Fifth Amendments. *See* Dkt. No. 1 at 1-3. Plaintiff also filed a state law negligence claim. *See* Dkt. No. 1 at 3. In a February 19, 2019 Order and Report-Recommendation, Magistrate Judge Dancks reviewed the complaint and granted Plaintiff's application to proceed *in forma pauperis*. *See* Dkt. No. 5 at 1-2. Magistrate Judge Dancks found that Plaintiff's claims against the New York State Police are barred by the Eleventh Amendment, but recommended that the Court grant Plaintiff an additional thirty days in which to amend her complaint by naming an individual defendant or defendants who do not have Eleventh Amendment immunity. [1] *See* Dkt. No. 5 at 6-7. For the reasons that follow, the Court affirms Magistrate Judge Dancks' Order and Report-Recommendation in its entirety.

## II. BACKGROUND

Plaintiff alleges that on July 15, 2018, after a vehicle rear-ended the vehicle in which Plaintiff and her friends were traveling, the responding state trooper yelled profanities at Plaintiff and her friends and ordered the driver of Plaintiff's vehicle to exit the car. *See* Dkt. No. 1 at 2. Plaintiff began recording the incident, but the trooper told her to put her phone down and then allegedly assaulted her and placed her in handcuffs. *Id.* First, Plaintiff alleges that the trooper violated her Fourth Amendment rights by unlawfully imprisoning Plaintiff and by using excessive force. *Id.* at 3. Second, Plaintiff alleges that the trooper violated her Fifth Amendment right to due process of law by forcefully removing her from the car and handcuffing her. *Id.* Third, Plaintiff alleges that the trooper violated her First Amendment rights by telling her to put her phone down after she began recording the trooper. *Id.* Lastly, Plaintiff asserts a state law negligence claim for the trooper's failure to obtain the medical attention that Plaintiff requested at the accident scene. *Id.* According to Plaintiff, Defendant New York State Police has not arrested this trooper or otherwise held her accountable for this incident. *Id.* Plaintiff seeks both monetary damages and the trooper's arrest. *Id.* at 4.

## III. DISCUSSION

### A. Standard of Review

Section 1915(e)(2)(B) directs that, when a plaintiff seeks to proceed *in forma pauperis*, "(2) ... the court shall dismiss the case at any time if the court determines that – ... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). [2] Thus, although the court must show liberality toward *pro se* litigants, *see Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and should exercise "extreme caution ... in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond, ..." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983) (internal citations omitted), the court also has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed with an action *in forma pauperis.* [3]

**\*2** When reviewing a complaint under section 1915(e), the court may also look to the Federal Rules of Civil Procedure. Rule 8 of the Federal Rules of Civil Procedure provides that a pleading setting forth a claim for relief shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). Rule 8's purpose " 'is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer [and] prepare an adequate defense.' " *Hudson v. Artuz*, No. 95 CIV. 4768, 1998 WL 832708, \*1 (S.D.N.Y. Nov. 30, 1998) (quoting *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995)) (other quotation and citation omitted).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). A complaint filed by a *pro se* litigant should not be dismissed without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991) (citation omitted).

If a litigant files specific objections to a magistrate judge's report-recommendation, the district court makes a "*de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). However, if a litigant fails to file objections or files "[g]eneral or conclusory objections or objections which merely recite the same arguments [presented] to the magistrate judge," the court reviews those recommendations for clear error. *O'Diah v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, \*1 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted); *see also McAllan v. Von Essen*, 517 F. Supp. 2d 672, 679 (S.D.N.Y. 2007) (citation omitted). After the appropriate review, "the court may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate [judge]." 28 U.S.C. § 636(b)(1)(C).

### B. Analysis of the Order and Report-Recommendation

Plaintiff's complaint names the New York State Police as the only defendant in this action. *See* Dkt. No. 1 at 1. Magistrate Judge Dancks correctly determined that Plaintiff's claims against the New York State Police are barred by both the Eleventh Amendment and the language of § 1983. *See Pierce v. New York State Police (Troop D Lowville)*, No. 7:05-CV-1477, 2011 WL 1315485, \*13 (N.D.N.Y. Apr. 4, 2011) (citing *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 66-71 (1989)). [4]

**\*3**  The Eleventh Amendment to the United States Constitution bars federal courts from exercising subject matter jurisdiction over claims against a state or one of its agencies absent their consent to such a suit or an express statutory waiver of immunity. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 90-100 (1984). Congress did not abrogate the Eleventh Amendment immunity granted to the states when it enacted 42 U.S.C. § 1983 because it is well-settled that states are not "persons" under section 1983. *See Quern v. Jordan*, 440 U.S. 332, 240-41 (1979); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (citation omitted).

The Eleventh Amendment's immunity extends to the New York State Police as an agency of the State of New York. *See, e.g., Riley v. Cuomo*, No. 2:17-CV-01631, 2018 WL 1832929, \*4 (E.D.N.Y. Apr. 16, 2018) (holding that the New York State Police, as a division in the executive department of the State, is immune from claims under § 1983); *Finkelman v. New York State Police*, No. 06 Civ. 8705, 2007 WL 4145456, \*3 (S.D.N.Y. Nov. 15, 2007) (holding that the Eleventh Amendment barred the plaintiff's suit seeking monetary damages under § 1983 against New York State Police) (citing *Morrongiello v. Ashcroft*, No. 01 Civ. 2524, 2004 WL 112944, \*2 (S.D.N.Y. Jan. 22, 2004)); *Estes-El*, 954 F. Supp. at 536 (same). Furthermore, the New York State Police is not a person subject to suit under § 1983. *See Lilly v. Cullen*, No. 15-CV-874A(F), 2017 WL 1273972, \*3 (W.D.N.Y. Mar. 14, 2017) (citing *Will*, 491 U.S. at 65). For the foregoing reasons, Magistrate Judge Dancks correctly determined that the Court should dismiss Plaintiff's claims against the New York State Police for lack of subject matter jurisdiction under 28 U.S.C. § 1915(e)(B)(iii) and Rule 12(h)(3) of the Federal Rules of Civil Procedure. *See* Dkt. No. 5 at 6.

Finally, the Court finds that Magistrate Judge Dancks correctly determined that Plaintiff should be granted leave to amend. In any such amended complaint, Plaintiff shall name as a defendant any individuals employed by the New York State Police whom she believes violated her various Constitutional rights, as set forth in more detail by Magistrate Judge Dancks.

## IV. CONCLUSION

After carefully considering Magistrate Judge Dancks' Order and Report-Recommendation and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Magistrate Judge Dancks' February 19, 2019 Order and Report-Recommendation is **ADOPTED**; and the Court further

**ORDERS** that Plaintiff shall file her amended complaint within **THIRTY (30) DAYS** of the date of this Order;[5] and the Court further

**ORDERS** that if the Plaintiff amends her complaint, the amended complaint shall be sent to Magistrate Judge Dancks for initial review; and the Court further

**ORDERS** that, if Plaintiff fails to file her amended complaint within thirty (30) days of the date of this Order, the Clerk of the Court shall enter judgment in Defendant's favor and close this case without further order from the Court; and the Court further

**\*4  ORDERS** that the Clerk of the Court shall serve Plaintiff with a copy of this Memorandum-Decision and Order in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2019 WL 2511154

**WESTLAW**    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Kilcher v. New York State Police, Not Reported in Fed. Supp. (2019)

2019 WL 2511154

---

### Footnotes

1    A § 1983 claim for monetary damages brought against a state trooper in his or her individual capacity is not barred by the Eleventh Amendment. *See Estes-El v. Town of Indian Lake*, 954 F. Supp. 527, 537 (N.D.N.Y. 1997). Individual capacity suits seek to impose individual liability upon a government officer who has caused the deprivation of a federal right while acting under color of state law. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991).

2    To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

3    "Dismissal of frivolous actions pursuant to 28 U.S.C. § 1915(e) is appropriate to prevent abuses of the process of the court," *Nelson v. Spitzer*, No. 9:07-CV-1241, 2008 WL 268215, *1 n.3 (N.D.N.Y. Jan. 29, 2008) (citation omitted), as well as "to discourage the filing of [baseless lawsuits], and [the] waste of judicial ... resources[.]" *Neitzke*, 490 U.S. at 327.

4    The Eleventh Amendment also bars Plaintiff's state law negligence claim against the New York State Police. *See Pennhurst*, 465 U.S. at 120; *Winokur v. Office of Court Admin.*, 190 F. Supp. 2d 444, 450-51 (E.D.N.Y. 2002).

5    Any amended complaint must be a complete pleading that supercedes the original complaint in all respects and does not incorporate by reference any portion of the original complaint. Plaintiff must comply in all respects with Rules 8(a) and 10(b) of the Federal Rules of Civil Procedure, which require, among other things, that the amended complaint contain a short and plain statement of each claim showing that Plaintiff is entitled to relief and that she state her claims in numbered paragraphs, each limited as far as practical to a single set of circumstances.

---

**End of Document**    © 2026 Thomson Reuters. No claim to original U.S. Government Works.